Terry Lesley **WOODWARD**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 01–97–00644–CR, 01–97–00645–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

June 30, 1999.

Winston E. Cochran, Jr., Houston, for Appellant.

John B. Holmes, Dist. Atty. of Harris County, Alan Curry, Asst. Dist. Atty., Houston, for State.

Panel consists of Justices MIRABAL, O'CONNOR, and NUCHIA.

## OPINION

MIRABAL, Justice.

Three charges against appellant, Terry Lesley Woodward, were tried to the same jury: aggravated assault of Luis Melendez; aggravated kidnapping of Patricia Caisedo; and possession of cocaine. The jury found appellant not guilty of aggravated kidnapping of Patricia Caisedo, and guilty of the other two offenses. The jury assessed punishment at 30 years confinement for the aggravated assault,[1] and two years confinement for the possession of cocaine.[2] We affirm.

### Procedural Facts Relevant to Both Appeals

During deliberations at the guilt-innocence phase, the jury sent out the following note:

> We would like to hear [appellant's] testimony about where he was held down by the neck.

The trial court permitted the court reporter to read back a portion of appellant's

---

1. Trial Court Cause No. 741,537; Appellate Cause No. 01–97–00645–CR.

2. Trial Court Cause No. 741,538; Appellate Cause No. 01–97–00644–CR.

testimony in question and answer form. The reporter's record states the "requested portion of the testimony was read back for the jury," without setting out the questions and answers read back. We note that the record before us reveals that the totality of appellant's testimony "about where he was held down by the neck" appears on five pages of the reporter's record.[3]

Before the reading of the testimony to the jury, the judge said the following:

> [Defense counsel] has left the court without advising me or without seeking my permission. I am not going to keep the jury waiting for these notes to be answered. The testimony that applies to No. 1 has already been found by the Court Reporter. There seems to be no question that this is what the jury wants; therefore, I'm not going to hold off the jury deliberations while [defense counsel] is absent.

The record does not indicate when defense counsel re-entered the courtroom. The jury retired after hearing the testimony read, and returned its verdict about 24 minutes later.

### Possession of Cocaine Conviction

■ In a sole point of error in his appeal of the cocaine possession conviction, appellant asserts he was denied effective assistance of counsel. Appellant's primary complaint is that the trial court conducted the part of the trial described above in the absence of his counsel.

As noted at the outset, the same jury, during the same trial, heard evidence regarding three different charges against appellant. When appellant was arrested at the scene for the assault and kidnapping charges, he was searched by the police incident to the arrest. The search revealed appellant was in possession of a glass crack pipe that contained cocaine. As a result, appellant was charged with the offense of possession of cocaine.

It is clear that the testimony the jury requested to hear related *solely* to the aggravated assault charge. Yet, appellant argues the reading back of this testimony was a "critical stage" of the trial of the possession of cocaine charge, and therefore the absence of counsel during the reading back of this irrelevant testimony requires a reversal of the possession of cocaine conviction. Appellant has misconstrued *United States v. Cronic*, 466 U.S. 648, 660, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984) and its progeny.

The U.S. Supreme Court in *Cronic* gave clear guidance for determining whether a defendant has been deprived of the Sixth Amendment right to effective assistance of counsel:

> In our evaluation ... we begin by recognizing that the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. *Absent some effect of challenged conduct on the reliability of the trial process*, the Sixth Amendment guarantee is generally not implicated.... Thus, *we do not view counsel's performance in the abstract*, but rather the impact of counsel's performance upon "what after all, is [the accused's], not counsel's trial."

*Cronic*, 466 U.S. at 658, 104 S.Ct. at 2046 (emphasis added). The Court acknowledged that certain circumstances are "so likely to prejudice the accused" that it is not necessary to "litigate" their effect, pointing to total absence of counsel, or denial of counsel at a critical stage of trial, as examples. *Id.* at 658–59, 104 S.Ct. at 2046–47. Thus, the concept of "prejudice to the accused" is intimately intertwined with the concept of "critical stage of trial."

For example, in *Gobert v. State*, the Court acknowledged that, in the abstract, jury *voir dire* is a "critical stage of trial." 717 S.W.2d 21, 23 (Tex.Crim.App.1986). However, under the *particular circumstances* of the case, the absence of counsel

3. The five pages of testimony are reproduced in an Appendix to this opinion.

during a portion of *voir dire* did not mandate reversal because of **lack of prejudice** to the defendant. *Id.* at 23–24. Similarly, in *United States v. Simpson,* the Court examined the circumstances of trial counsel's absence **four different times** during the trial and concluded the absences did not constitute ineffective assistance of counsel. 901 F.2d 1223, 1229 (5th Cir. 1990).

Accordingly, in the present case, we are not to judge the record in the abstract. Rather, we are to determine whether the **particular circumstance** involved here was "so likely to prejudice" appellant that constitutional error occurred.

We conclude that the reading back to the jury of testimony that had absolutely **no relevance** to the issues in the cocaine possession trial, was not prejudicial to appellant, and was not a "critical stage" of that proceeding. We further conclude that trial counsel's absence at that time did not deprive appellant of effective assistance of counsel under the *Strickland*[4] standard. The standard of review set out in *Strickland,* and adopted by the Texas Court of Criminal Appeals in *Hernandez v. State,* requires a defendant to show that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) there is a reasonable probability (*i.e.,* a probability sufficient to undermine confidence in the outcome) that, but for counsel's error, the result of the trial would have been different. *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2068; *Hernandez,* 726 S.W.2d 53, 56–57 (Tex.Crim.App.1986). In the present case, the second prong of the *Strickland* standard is not met because there is no reasonable probability that the result of the trial of the cocaine possession charge would have been different if appellant's trial counsel had been present when the requested non-pertinent testimony was read back to the jury.

■ Appellant next argues that he received ineffective assistance of counsel at the guilt-innocence and punishment phases

by the failure of his counsel to present a motion to quash an enhancement allegation, and by his counsel's failure to make a valid objection to some of the punishment evidence.

■ To meet the burden of proving ineffective assistance of counsel, a defendant must overcome the presumption that under the circumstances, the challenged action might be considered sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2064. The record is silent as to the reasons trial counsel conducted appellant's defense as he did. To find that trial counsel was ineffective based on any of the asserted grounds would call for speculation, which we will not do. *See Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App. 1994); *Gamble v. State,* 916 S.W.2d 92, 93 (Tex.App.—Houston [1st Dist.] 1996, no pet.); *Safari v. State,* 961 S.W.2d 437, 445 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd) (applying *Jackson* and *Gamble* to claims of ineffective assistance of counsel during both the guilt-innocence and punishment phases).

Accordingly, we overrule appellant's sole point of error in his appeal of the possession of cocaine conviction.

### Conviction for Aggravated Assault of Luis Melendez

■ In point of error one in his appeal of the aggravated assault conviction, appellant asserts the trial court erred when it read the above described portions of the trial testimony to the jury without first determining whether the jury disagreed about the testimony.

The Code of Criminal Procedure provides as follows:

> In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other; but if

4. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

there be no such reporter, or if his notes cannot be read to the jury, the court may cause such witness to be again brought upon the stand and the judge shall direct him to repeat his testimony as to the point in dispute, and no other, as nearly as he can in the language used on the trial.

TEX.CODE CRIM. P. ANN. art. 36.28 (Vernon 1981). Appellant points out that the trial court was aware of its error when, after reading the testimony, the judge told the jury "I'm going to give you a—a form because normally we read back testimony only if there's a dispute among members of the jury, a disagreement as to what it was, so you can see that."

 The jury must disagree about a specified part of the testimony before a witness's statement may be read to them. *Moore v. State*, 874 S.W.2d 671, 673 (Tex. Crim.App.1994). The jury must inform the trial judge of its disagreement so that the judge will know what testimony is in dispute and can determine if the request is proper. *Id.* A simple request for testimony does not, by itself, reflect disagreement, implicit or express, and is not a proper request under article 36.28. *Id.* Therefore, the trial court erred when it read the testimony to the jury without first determining if the jury disagreed about the requested testimony. We next consider whether appellant was harmed by the error. *See DeGraff v. State*, 934 S.W.2d 687, 688 (Tex.Crim.App.1996) (holding that appellate court erred in not conducting harm analysis after determining trial court did not comply with article 36.28).

 Appellant contends article 36.28 is the "course of law" that is "due or prescribed in the trial of a criminal case" and he was denied "due process of law" when the trial court did not comply with article 36.28.[5] Therefore, appellant urges

us to conduct our harm analysis under Appellate Rule of Procedure 44.2(a) (constitutional error), rather than Rule 44.2(b) (other errors). Appellant provides no support for this contention. The requirement that a trial judge first determine whether a jury disagrees about a witness's testimony before reading the testimony to the jury is not mandated in either our state or federal constitutions. This requirement is purely a creation of the Legislature. Thus, the error did not constitute the denial of a constitutional right, and a harm analysis under Rule 44.2(a) is not required.

Rule 44.2(b) states "Any other error . . . that does not affect substantial rights must be disregarded." TEX.R.APP. P. 44.2(b). The Court of Criminal Appeals has interpreted "substantial right" as follows: "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997).

In the appendix, we have reproduced in full the testimony covered by the jury's request. The testimony, which is appellant's account of the struggle, is favorable to appellant. We can conceive of no prejudice to appellant by the trial court permitting the reading of any of this testimony to the jury. Accordingly, the trial court's error does not constitute reversible error.

We overrule point of error one.

In point of error two in his appeal of the aggravated assault conviction, appellant asserts he was denied effective assistance of counsel. Appellant advances the same arguments under this point of error that he advanced under his sole point of error in the appeal of the cocaine possession conviction. For the reasons already expressed in this opinion (no possible preju-

---

**5.** Although appellant's argument invokes both state and federal constitutional protections, he has not separated his points of error in such a way as to argue a separate ground of relief under the Texas Constitution; nor has he argued how the protection provided under the Texas Constitution differs from that pro-

vided under the United States Constitution. Therefore, we must assume that he is claiming no greater protection under the Texas Constitution than that provided by the United States Constitution. *Muniz v. State*, 851 S.W.2d 238, 251–52 (Tex.Crim.App.1993).

dice to appellant with regard to reading the testimony back, and presumption of proper trial strategy with regard to the remainder of appellant's complaints), we overrule point of error two.

We affirm the judgment.

Justice O'CONNOR dissenting.

### APPENDIX

The following testimony of appellant appears at pages 192, 194, 220–222 of the reporter's record:

Q. Okay. How did that fight, the third fight, end?

A. I got knocked off my feet. I got knocked from the hallway into the bathroom. The—that's when I noticed the bathroom door was off the hinges. The bathroom door had already been knocked off its—some—some form—some way or another, it had been knocked off the hinges and was broken in half. It was laying in the floor of the bathroom. I landed on top of it.

Q. And what happened next?

A. Luis got on top of me and began choking me.

Q. Then what happened?

A. Then Patricia came in the bedroom and they talked in Spanish. Luis was holding—was just holding me down at this point. I was—I was pretty spent by now.

. . .

Q. Were you being choked?

A. No, I was not being choked during the conversation. I was being choked just prior to the conversation and after the conversation. But during the conversation, I was just being held down. I was unable to get up.

Q. Can you understand why Luis might have wanted to hold you down?

A. Yes, sir.

Q. What happened next?

A. After Patricia left the bathroom, I'm not—I'm not—I'm not going to be good at guessing this time. It seemed like an hour, but it was probably more like 10 minutes or so. Luis continued to beat me and choke me and on top of me. I never got out of the bathroom floor.

. . .

Q. And he was choking you?

A. Only in the bathroom at the end.

Q. How long did he choke you?

A. Off and on for maybe five or ten minutes. He wasn't—I wouldn't say choking as to kill me. He was holding me by the neck, holding me down by the neck.

Q. Well, wouldn't you say that if somebody is holding you down by the neck, they're choking you?

A. Well, I consider choking as someone who can't breath [sic]. I could breath [sic].

Q. I see.

A. I just could not get up.

Q. You wouldn't be saying that he wasn't choking you, he was just holding you down because there are no bruises on your neck, would you?

A. I hadn't thought about that.

Q. You'd agree with me that there were no bruises on your neck, right?

A. I can't say if there were any bruises or not. I didn't see my neck.

Q. So we'd agree, then, that he wasn't choking you, he was just holding you down; is that right?

A. He was on top of me, yes, sir.

. . .

Q. After that fight ended, sir, you found yourself in the bathroom; is that right?

A. That's correct.

Q. And Luis was holding you down, you said, choking you somewhere around 10 minutes. And it was after that that the police arrived; is that right?

A. That's correct.

Q. So you were, then—after that fight, before the police arrived, it must have

been around—somewhere around 10 to 15 minutes; is that right?

A. Counting the choking, probably 15 minutes.

MICHOL O'CONNOR, Justice, dissenting.

I respectfully dissent.

The majority relies on *United States v. Cronic* and *Gobert v. State* for the proposition that we must conduct a harm analysis before determining whether a defendant has been deprived of the effective assistance of counsel. The majority's holding not only misreads *Cronic*, but flies in the face of the long-held rule in Texas criminal jurisprudence that a harm analysis is conducted only *after* we determine that there is error and the nature of that error. The majority first decides there was no harm, and then concludes there was no error.

I do not agree that *Cronic* stands for the proposition that "prejudice to the accused" is intertwined with the concept of "critical stage of trial." The issue in *Cronic* was whether a showing of prejudice was required "when circumstances hamper a given lawyer's preparation of a defendant's case." 466 U.S. at 650, 104 S.Ct. at 2042. The circumstances included the appointment of a young lawyer, with a real estate practice, having only 25 days to prepare for a criminal trial, even though the government had taken over four and one-half years to investigate the case and had reviewed thousands of documents during its investigation. The *Cronic* court had to decide whether the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance that ineffectiveness was properly presumed without inquiry into actual performance at trial.

Here, a critical stage of the appellant's trial proceeded without the presence of the appellant's attorney; thus, the appellant was deprived of his attorney's assistance at that stage. This amounts to an outright denial of counsel, not a potentially constructive denial of counsel as in *Cronic*.

Although the majority does not consider whether the error complained of by the appellant occurred at a "critical stage," I believe such an analysis provides an important backdrop to the holding of *Cronic* and its progeny, which is that when an accused is denied counsel at a critical stage, no harm analysis is required.

An accused is entitled to the assistance of counsel at each critical stage of the prosecution once the Sixth Amendment right to counsel attaches to an offense for which adversarial proceedings have begun. *Upton v. State*, 853 S.W.2d 548, 553 (Tex. Crim.App.1993). However, not every event following the inception of adversary judicial proceedings constitutes a critical stage so as to invoke the right to counsel under the Sixth Amendment. *Green v. State*, 872 S.W.2d 717, 720–22 (Tex.Crim. App.1994). The determination of whether a particular proceeding is a critical stage generally turns on an assessment of the usefulness of counsel to the accused at that particular proceeding. *Upton*, 853 S.W.2d at 553. The test for whether an event is a critical stage is whether the accused requires aid in coping with legal problems or assistance in meeting his adversary. *Green*, 872 S.W.2d at 720–22; *Jones v. State*, 902 S.W.2d 102, 105 (Tex.App.— Houston [1st Dist.] 1995, pet. ref'd).

Here, the trial court decided to respond to a jury note asking that the appellant's testimony be read back to them without first determining whether the jury disagreed about the testimony and while both the appellant and defense counsel were not in the courtroom. Because the appellant's attorney was not present when the testimony was read, the appellant did not have the opportunity to object to the trial court's not complying with Code of Criminal Procedure article 36.28, object to the jury question, determine the specific testimony the jury wanted to hear, or request that a court reporter record the specific testimony read. Therefore, under the analysis of *Upton* and *Green*, I would conclude that a trial court's determination of

whether to respond to an objectionable request for reading trial testimony is a critical stage in a criminal trial. *See Curtis v. Duval*, 124 F.3d 1, 4 (1st Cir.1997) (giving sua sponte jury instruction, after jury had already begun deliberating, without consulting, and in absence of, defense counsel, denied defendant assistance of counsel at critical stage of trial). Because counsel's assistance was essential at this stage of the appellant's trial, I believe it was error for the trial court to proceed in defense counsel's absence, thus, denying the appellant effective assistance of counsel at a critical stage of trial. *See Cronic*, 466 U.S. at 660, 104 S.Ct. at 2047. Therefore, the next question is whether such error is "structural error" not subject to a harm analysis or "trial error" subject to a harm analysis.

No error is categorically immune to a harmless error analysis, except for certain federal constitutional errors labeled by the United States Supreme Court as "structural." *Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997). The United States Supreme Court has held that structural error is present when counsel is either totally absent, or prevented from assisting the accused during a critical stage of the proceeding. *Cronic*, 466 U.S. at 660, 104 S.Ct. at 2047. *Cronic* reasoned that the right to counsel is not violated unless the challenged conduct affects the reliability of the trial process. *Id.* at 2046. Generally, this determination is made by examining the impact of counsel's performance upon the accused's trial. *Id.* at n. 22. However, *Cronic* expressly recognized there are circumstances so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified:

> Most obvious, of course, is the complete denial of counsel. The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial. Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the ad-

versary process itself presumptively unreliable.

*Id.* at 2046.

The holding in *Cronic* applies whenever a defendant is denied counsel during a critical stage, whether that be when counsel is not present in the courtroom or when counsel is prevented from assisting the defendant. *Cronic*, 466 U.S. at 659, 104 S.Ct. at 2047, n. 25 ("The Court has uniformly found constitutional error without any showing of prejudice when counsel is either totally absent, or prevented from assisting the accused during a critical stage of the proceeding."); *see also Arizona v. Fulminante*, 499 U.S. 279, 309–310, 111 S.Ct. 1246, 1264–1265, 113 L.Ed.2d 302 (1991) (recognizing total deprivation of counsel as an example of structural error); *Perry v. Leeke*, 488 U.S. 272, 280, 109 S.Ct. 594, 600, 102 L.Ed.2d 624 (1989) (actual or constructive denial of the assistance of counsel altogether is not subject to prejudice analysis); *see also see also Curtis*, 124 F.3d at 4 ("*Cronic* and its progeny do indeed stand for proposition that actual or constructive denial of the assistance of counsel at a critical stage of a criminal trial constitutes prejudice per se and thus invalidates a defendant's conviction."); *Childress v. State*, 794 S.W.2d 119, 122 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd) (noting that Supreme Court uniformly finds constitutional error without any showing of prejudice when counsel is absent or prevented from assisting the accused during critical stage of trial). Accordingly, under *Cronic* and its progeny, I would hold that the trial court's error was structural error not subject to a harm analysis.

I also disagree with the majority that the trial court's error is automatically subject to a harm analysis. The majority relies on *Gobert v. State* for the proposition that a harm analysis is required and the burden is on the appellant to show harm. The majority concludes that, because the testimony read back to the jury was not relevant to the appellant's cocaine posses-

sion conviction, he was not harmed by defense counsel's absence from the courtroom. The majority then applies this reasoning to the appellant's aggravated assault conviction, without recognizing that the testimony read to the jury was relevant to this conviction.

The *Gobert* court was faced with a different issue than the issue with which we are faced. The issue in *Gobert* was whether the appellate court erred in determining that defense counsel was absent when the State injected harmful material into voir dire. 717 S.W.2d at 21. The Court of Criminal Appeals held, "Under the circumstances of this case, we perceive no harm to appellant and *find that he was not deprived of the effective assistance of counsel.*" *Id.* at 24 (emphasis added). Here, the appellant was denied effective assistance of counsel during a critical stage of trial because counsel was not in the courtroom when that critical stage proceeded.

Even if a harm analysis is called for, one could not be conducted because we do not know what testimony was read to the jury. The majority conducts a harm analysis on an assumed record, a record that may have been complete had the trial court not improperly read the appellant's testimony to the jury in defense counsel's absence.

I would reverse the trial court's judgment and remand the cause for further proceedings.