William Wayne MARTIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 2–86–110–CR.

Court of Appeals of Texas, Fort Worth.

June 10, 1987.

Rehearing Denied July 15, 1987.

McMillan & Lewellen, P.C., Garry Lewellen, Stephenville, for appellant.

Dan B. Grissom, Dist. Atty., with Andrew Ottaway, Asst. Dist. Atty., Granbury, for appellee.

Before FENDER, C.J., and BURDOCK and LATTIMORE, JJ.

## OPINION

FENDER, Chief Justice.

A jury found appellant guilty of murder and fixed his punishment at 99 years. *See* TEX.PENAL CODE ANN. sec. 19.02(a)(1) (Vernon 1974).

Appellant complains: (1) of the failure of the trial court to grant an instructed verdict because the evidence is insufficient; (2) of the failure to instruct a verdict because the evidence shows death was caused by something other than appellant's acts; (3) because appellant's statements are not properly corroborated; (4) because the trial court commented on the evidence by charging as to death on the date alleged when it was actually over a year later; (5) that the court mishandled a jury inquiry as to testimony; (6) that the court improperly allowed demonstrative evidence; (7) that the prosecutor improperly commented on the parole law; and (8) that the court improperly charged the jury as to the law on parole.

We affirm.

The proof reflects that appellant attended a party in Hood County around August 1, 1982, as an uninvited guest. He beat up his girlfriend (who he had brought with him, uninvited) and a scuffle ensued with several of those in attendance. Ted Herr, the deceased, quelled the riot by pointing a rifle at appellant and firmly suggesting his immediate departure. Appellant took the hint but before vacating the premises he proclaimed, "I'll get you for this."

On August 7, 1982, at about 3:30 a.m., a traveler passing through Lipan on Highway 4 discovered deceased lying on the pavement, unconscious, his face severely lacerated, his neck abraded as if rope-burned, and reflecting other abrasions such as would occur if one were dragged along the earth's surface. Deceased was hospitalized promptly but remained comatose until August 10, 1983, when he expired. An hour and a half before the traveler made his startling discovery several people at a watering spot in Mingus had observed the deceased, well, alert and displaying no signs of violence.

On August 4, 1982, appellant related to a friend, one Purvis Cornstubble, that he wanted a "back-up" while he got revenge on a guy who held a gun on him. A week later appellant reported to Cornstubble that the police and some Granbury folks were looking for him. Following Cornstubble's inquiry as to the reason why, appellant said it had something to do with pulling somebody down a road. Cornstubble

also related to the jury that appellant owned a machete which he kept on the motorcycle and some parachute cord for pulling the motorcycle when it wouldn't start.

Sometime soon after August of 1982 appellant told another friend, one Charlie Gregory, that he (appellant) drug a fellow down the road and the fellow hit a reflector; that he (appellant) messed somebody up real bad on the Lipan highway. In the summer of '83 appellant and Gregory visited in the home of John and Tracie White on two occasions. On the second trip appellant told John White that he (appellant) put a rope around Mr. Herr's neck and then drug him down the road behind a motorcycle, that he (deceased) hit a reflector (described elsewhere as a metal markerpole with a reflector on it), and that he (appellant) took a machete and walked back and struck him (deceased) with it. Appellant further told John White of the earlier fight and resultant grudge, and that having repaid the insult he left the man on the Lipan highway. On the first visit Tracie White reported that appellant said of the victim, "[w]ell, he shouldn't have f____d with me." On the second visit appellant inquired of Tracie if the guy was still alive, and upon receiving an affirmative answer proceeded to say "[a]ll I did was cut his throat." Appellant went on to tell Tracie that the guy shouldn't have messed with his (appellant's) girlfriend and "I hope the son-of-a-bitch dies. He got what he deserved."

Evidence from the death certificate and the emergency treating physician reflected the cause of death as respiratory arrest, with contributing cause of severe pneumonia, with contributing cause of post-head injury with coma. The doctor stated that the head injury and coma were a causation of the death of Ted Herr.

■ In stating his first point of error appellant makes a general assertion of insufficiency of the evidence. In his argument thereto appellant specifically attacks the evidence offered to prove the *cause* of death. Section 6.04, Texas Penal Code, defines causation:

A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

TEX.PENAL CODE ANN. sec. 6.04(a) (Vernon 1974).

The death certificate was admitted into evidence, without objection, as a business record. The original treating physician examined the hospital records covering the time deceased lay semi-comatose, together with the death certificate, and testified that the head injuries he treated were *a* cause of death. The physician testified that some of the head wounds were consistent with deceased having been struck by a machete. Appellant told people he had struck the deceased with a machete. Viewed in the light most favorable to the verdict this is sufficient evidence of the cause of death. The first point of error is overruled.

In his second point of error appellant attempts to set forth a conclusive presumption of a different intervening cause based on the ancient common law doctrine that death must occur within a year and a day following the injury. Although such argument was quite tenable prior to 1974, the Legislature did away with the year and a day rule when section 1199, Texas Penal Code of 1925, was repealed in favor of section 6.04, Texas Penal Code. *See* Act of June 14, 1973, ch. 399, sec. 3, 1973 Tex.Gen. Laws 883, 994. Point of error number two is overruled.

■ Appellant's third point of error attacks the failure of the trial court to charge the jury on the matter of corroboration of appellant's statements which were introduced through various witnesses. The thrust of appellant's argument appears in his brief as follows:

In this case, although there may be little doubt that the crime of murder was committed, the proof of Defendant's agency or responsibility therefor rests almost exclusively upon testimony, by third parties, attributing rather ambigu-

ous, but admittedly incriminating, statements to the Defendant.

Appellant cites *Jones v. State*, 132 Tex. Cr.R. 216, 104 S.W.2d 42 (App.1937) (per curiam) as authority. *Jones* was reversed because the record reflected that the grand jury indicted for murder by methods and means unknown while the district attorney had in his possession a confession specifically admitting "choking with the hands" (which he fully intended to offer at the trial). In subsequent *dictum* the court advised that the facts of that case might well require a charge to the jury on corroboration. It is not in point as to this case.

In our ruling we depend upon the statement in *Thomas v. State*, 458 S.W.2d 817 (Tex.Crim.App.1970) which fully responds to appellant's contention as stated:

> After the corpus delicti or body of the crime has been established apart from the confession, the identity of the accused as a participant in the crime may rest alone upon his confession. [Citations omitted.]

*Id.* at 819. The third point of error is overruled.

■ In point of error number four appellant complains that the court's charge, in applying the law to the facts, informs the jury that if they find that on or about August 7, 1982, appellant caused the death of deceased they should find him guilty; whereas, in fact, deceased did not expire until more than a year later. Appellant claims that the failure to separate the date of injury from the date of death was impermissibly confusing to the jury. Appellant cites no case directly in point. We note that the *cause* of death occurred on the date set forth in the indictment. It is the *cause* with which appellant is charged. We perceive no error. Point of error number four is overruled.

■ Point of error number five assigns impropriety to the manner in which the trial court responded to a note of inquiry from the jury. During deliberations a written request was received from the jury requesting that the court reporter "read back" certain testimony. The court found the request too broad for compliance and instructed the jury to certify which specific testimony caused the disagreement. In an effort to assist the jury in describing the testimony, the court instructed them to name the witness, name the lawyer asking the question and describe the nature of the statement.

The jury had earlier requested and received all evidence that had been admitted together with a complete list of all witnesses (divided into state's witnesses and defendant's witnesses). The inquiry in question, in pertinent part, is as follows (entirely in handwriting):

> We would like to have these portions of testimony read back.
>
> 1) Billy Martins request for help in revenge and why he needed the help. (P. Cornstubbles testimony)
>
> 2) Gregory's testimony about his and Martins ride to John Whites.
>
> 3) John & Tracy Whites testimony about what Billy Martin confessed to.
>
> 4) Cornstubble's testimony of his an[d] Billy Martins conversation while on their way to Okla.
>
> Ronny Naylor, DVM

The court then sent in the following typed instruction (handwritten entries in brackets; file marks, etc. omitted):

MEMBERS OF THE JURY:

In view of your request for certain testimony, I instruct you as follows:

> "If the jury disagrees as to the statement of any witness, they may, upon applying to the Court, have read to them from the court reporter's notes that part of such witness's testimony or the particular point in dispute, and no other."

In accordance with this rule, you are instructed that a request to have the court reporter's notes read cannot be complied with unless the jury disagrees as to the statement of a witness. Therefore, it will be necessary for you to certify that you are in disagreement as to the statement of a witness, and you should request that part of the witness's statement or point in dispute, and only that part or point which is in dispute. Please

fill in the form below and have your foreman sign the same. [Attach the same information below to additional pages, if needed. Please Detain this Note.]

[Ralph Walton, Jr.]
JUDGE [3:45 P.M., February 14, 1986]

Name of Witness whose statement is subject to disagreement:
[John White & Pervis Cornstubble]
Lawyer questioning witness at time of statement:
[Dan Grissom]
Statement in dispute:
[1) John White said Billy told him "I drug a guy behind my cycle he hit a reflector and I hit him with my machete.]
[2) P. Cornstubble said Billy told him "I want backup to get a guy who threatened me with a gun."]

[Thank you]
[Ronny Naylor, DVM]
[Foreman]

Appellant objected to the action of the court in sending the instruction to the jury with blanks to be filled in requiring the jury to note which attorney was questioning the witness. The thrust of the objection was that something might be omitted during questions by opposing counsel. When the response shown above was received from the jury appellant again objected on the ground that Cornstubble's testimony on cross-examination did not "match up" with his direct testimony. The trial court directed the court reporter to "read back" the direct testimony delineated by the jury's response.

Appellant relies on *Jones v. State,* 706 S.W.2d 664 (Tex.Crim.App.1986) as authority for his complaint as to this procedure. In *Jones* three different versions of a shooting were presented to the jury; that of the complainant (and his friend), that of the defendant, and the testimony of a "neutral" observer. In response to a jury note the court (in *Jones*) sent back an instruction similar to the instant instruction. The jury responded by stating the disputed issue *and* designating "from the DA's ques-

tions." Again Jones objected to failure to include cross-examination of the observer.

In *Jones,* the Court of Criminal Appeals held error was committed when the trial court limited the "read-back" to direct examination *because* an examination of the entire record reflected some evidence at substantial variance with the direct testimony—evidence that could have benefitted Jones' self-defense plea. We have examined the entire testimony of both witnesses in this case and find nothing in the cross-examination that varies in any way from the testimony actually re-read to the jury. Although we thoroughly condemn this type of instruction to a jury as a means of narrowing the scope of the inquiry, in this case we find that if there was error, same is harmless. Point of error number five is overruled.

■ In his sixth point of error appellant complains of the introduction of a piece of rope which was described by a witness as being identical with a rope carried by appellant on his motorcycle except for its color. In light of other testimony we find no abuse of discretion on the part of the trial judge in admitting this demonstrative evidence. *See Simmons v. State,* 622 S.W.2d 111, 113 (Tex.Crim.App.1981). Point of error number six is overruled.

■ Appellant combines the seventh and eighth points of error concerning parole. Point seven complains of the prosecutor's statement in opening argument on punishment wherein the prosecutor, going through the several sections of the charge, points out that there is a charge on the general provisions of the parole law and summarizing such provisions. Objection was made that the prosecutor was attempting to apply the probation law to this defendant (appellant). The objection was overruled and the prosecutor concluded by pointing out that the jury must not undertake to apply such rules, just to generally understand the law on parole. We find no error in this argument, particularly since such disclaimer was included in the prosecutor's remarks.

In the eighth and final point of error appellant urges that the charge given on the parole law is confusing and contradictory, as to the parole law itself and the proper nature of the jury's consideration of it. The court charged on parole in the words of the statute, article 37.07, section 4(b), Texas Code of Criminal Procedure. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4(b) (Vernon Supp.1987). This court has previously held that the statutory instruction is not unconstitutionally vague or contradictory. *See Shaw v. State,* 729 S.W.2d 134, 135 (Tex.App.—Fort Worth, 1987); *Spelling v. State,* 719 S.W.2d 404, 409–10 (Tex.App.—Fort Worth 1986, pet. granted). Furthermore, the jury is clearly instructed not to consider how the parole law may be applied to a particular defendant. TEX.CODE CRIM.PROC.ANN. art. 37.07, sec. 4(b). The statute is not confusing in this respect. Point of error number eight is overruled.

The judgment of the trial court is affirmed.