

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1086-15

**JEREMY THOMAS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

RICHARDSON, J., delivered the opinion of the Court in which MEYERS, JOHNSON, and ALCALA, JJ. joined, and in which KELLER, P.J., and KEASLER, HERVEY, and YEARY, JJ., joined except as to Section A. YEARY, J. filed a concurring opinion. NEWELL, J. did not participate.

### O P I N I O N

Appellant, Jeremy Thomas, was tried for the murder of Vernon Keith Moses. While

the jurors were deliberating guilt, they requested that the court read to them a portion of a

witness's testimony, which is permitted under Texas Code of Criminal Procedure Article

36.28.[1] The trial court complied. The jury resumed deliberations and ultimately found Appellant guilty. Appellant was sentenced to life in prison. On direct appeal, Appellant claimed that the trial court erred by reading too little testimony to the jury. The First Court of Appeals agreed that the trial court erred under Article 36.28 by failing to read additional testimony that would have been responsive to the jury's request, but it also held that the error was harmless and therefore affirmed Appellant's conviction.[2] We agree that the trial court's error was harmless and affirm the judgment of the First Court of Appeals.

## BACKGROUND

On August 3, 2006, at just after 11:00 p.m., Vernon Keith Moses was shot and killed in the doorway of his apartment in southwest Houston. Two eyewitnesses claimed they saw the shooting. Trancquena Johnson and Ochelata Reliford testified unequivocally that Appellant was the one who shot Moses. There was no evidence before the jury to suggest that anyone else was the shooter. However, Appellant was permitted to present evidence that Carnell Meredith, a co-defendant, was present at the time of the shooting and had already pled guilty to the murder of Moses.

---

[1] "In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other; . . . ." TEX. CODE CRIM. PROC. art. 36.28.

[2] *Thomas v. State*, 470 S.W.3d 577, 587-88 (Tex. App.—Houston [1st Dist.] 2015).

In addition, there were varying accounts among the witnesses as to how many people may have been present at the time of the shooting. Trancquena Johnson maintained that there were four people standing outside Moses' apartment just before Appellant shot Moses: Appellant; another man in a white shirt who was with Appellant; Moses; and a woman who was with Moses. It is likely one of these individuals was Carnell Meredith. Ochelata Reliford, another witness, testified that there were more than four people standing around at the time of the shooting, but there were at least two men with Appellant when Appellant shot Moses. A third witness, Maria Coronado, who lived in the apartment next door to Appellant's apartment, testified that she did not see the shooting, but she saw Appellant and one other man come up the stairs, then go back down again just before she heard shots fired. Another resident of the apartment complex, Brandon Lusk, testified that, when he came home around 11:00 p.m., he saw Moses in the parking lot of the apartment complex, appearing "mad" and "upset," and talking with an "older looking guy" in a white shirt and blue jeans. Lusk said that, shortly thereafter, while in his apartment, he heard shots and saw a man in a black shirt and shorts walking by his apartment with a gun in his left hand. He did not see the man's face.

During deliberations, the jury sent a note to the trial court asking the court to provide "all transcripts of the case." The trial court sent the jury a form stating that, if the jury disagrees on the statement of a witness, they could ask to have that testimony read back to

them on the point in dispute. The form instructed the jury to certify a disagreement as to the statement of a witness and request that part of the testimony. The form had blanks for the witness's name, the lawyer doing the questioning at the time, and the statement in dispute. The jury sent the form back indicating that the witness was "Tranquena [*sic*] Johnson," the lawyer questioning was "State," and the statement in dispute was, "With respect to the people outside Mr. Moses's apartment immediately prior to the shooting, we are in dispute as to the number of people present and the respective colors of their shirts."

The trial court judge brought the jury back into the courtroom and had the court reporter read three brief portions of Johnson's testimony—two from her direct examination by the State and one from her cross-examination by Appellant's trial counsel:

Q:    Then, what happened?

A:    And as I was getting them from the car, the defendant ran past me.

Q:    What did you notice about him, as he ran by?

A:    I noticed him because of me seeing him prior. And there's nothing specific that I noticed. What he was wearing and that, you know, I had seen him before.

Q:    What was he wearing?

A:    A black T-shirt. I don't really remember shoes or anything like that.

* * *

Q:    So there were four people total that you saw outside that apartment?

A:      Yes.

* * *

Q:      And as you're looking there, how many people can you see standing there arguing?

A:      Four.

At trial, but off the record, Appellant's trial counsel objected that the judge was not reading enough of Johnson's testimony back to the jury in response to their request. After a brief conference at the bench, the judge allowed Appellant's trial counsel to state the following objection on the record:

> I wanted there to be the inclusion of any testimony and not just in direct, but to also add anything from cross and any type of redirect, and issue under the cross-examination or direct of Trancquena Johnson relating to the number of people. I ask that it be included in its entirety.

The trial court judge overruled the objection "based strictly on the request of the jury," as the jury "made a very specific request" as to which witness's testimony, "and they went on to narrow that to questions asked by the State."[3]  The jury resumed deliberations and ultimately found Appellant guilty of murder. The trial court sentenced Appellant to life imprisonment.[4]

---

[3] We note that the third excerpt read to the jury was from Johnson's cross-examination. Thus, Appellant's objection to the court's failure to read from her cross-examination is confusing, as is the court's ruling "based strictly" on the jury's request for Johnson's testimony in response to questions asked by the State.

[4] After his conviction, Appellant filed a notice of appeal and a motion for new trial. His motion for new trial was granted by the trial court, and his direct appeal was abated during the State's appeal

## APPELLANT'S DIRECT APPEAL

In his appeal to the First Court of Appeals, Appellant argued—among other points not pertinent to our review—that the trial court erred by failing to fairly interpret and respond to the jury's request for a reading of testimony during deliberations. Appellant claimed (1) that the trial court should have included additional testimony from the cross-examination of Johnson that would also have been responsive to the jury's request, (2) that the trial court improperly limited the portions of testimony the jury could request, (3) that the trial court should have included Reliford's testimony, and (4) that the reading exceeded the scope of the request. The First Court of Appeals concluded that only the first complaint—that the trial court should have included additional testimony from the cross-examination of Johnson—had

---

of the order granting a new trial. In his motion for new trial, Appellant argued that he had obtained compelling evidence that was not presented at trial, which was the affidavit of Shelita Vallery (sister of Appellant's girlfriend, Ciarra Vallery), in which she claimed that she witnessed Carnell Meredith, not Appellant, shoot Moses. The trial court held that it, and the jury, should have known of this exculpatory evidence. The trial court granted Appellant's motion for new trial. The First Court of Appeals reversed the trial court's order granting a new trial and reinstated Appellant's conviction and sentence, holding that, because Appellant's trial counsel "was undisputedly aware of the exculpatory evidence before trial but consciously decided, on the record, not to call the witness at trial, the trial court erroneously granted Thomas's motion for new trial in the interest of justice." *State v. Thomas*, 426 S.W.3d 233, 241 (Tex. App.—Houston [1st Dist.] 2012). This Court agreed, holding that a new trial could not be granted in the interest of justice upon a claim that Appellant's trial counsel failed to call an exculpatory witness who was known to him and available at trial, unless the claim was based on ineffective assistance of counsel, which, in this case, it was not. *State v. Thomas*, 428 S.W.3d 99 (Tex. Crim. App. 2014). Appellant's direct appeal was reinstated.

been preserved and that the other three were forfeited because they did not comport with Appellant's trial objection.[5]

In his brief filed with the First Court of Appeals, Appellant argued that what was read to the jury was "incomplete and misleading."[6] He complained that the testimony that was read to the jury "completely failed to mention any testimony of the man in the white shirt and the woman."[7] Appellant asserted that, "for example," the trial court should have read the following excerpt of Johnson's testimony from her cross-examination which would have been "of value" to the jury:

[Defense counsel]: As you're looking there, how many people can you see standing there arguing?

[Trancquena]: Four.[8]

[Defense counsel]: All right. So you have the female?

---

[5] *Thomas v. State*, 470 S.W.3d 577, 586 (Tex. App.—Houston [1st Dist.] 2016) ("[T]o the extent he complains about matters other than the fact that the reading did not include excerpts from Johnson's cross-examination, he has failed to preserve these complaints for appellate review.").

[6] Brief of Appellant at 13, *Thomas v. State*, 470 S.W.3d 577 (Tex. App.—Houston [1st Dist.] 2016) (No. 01-11-00258-CR).

[7] *Id.* at 19. Appellant's arguments before this Court expand his claim regarding the man in the white shirt. Appellant now claims his "entire defensive narrative focused on the fact that another man at the scene was the shooter, and the unidentified man in the white shirt was a prime suspect."Appellant argues that, "[b]y omitting the man in the white shirt from the read-back, it was the same as instructing the jury that Trancquena never saw him at all . . . . After the read-back, the man in the white shirt evaporated and only Jeremy Thomas was left holding the gun." Appellant's Brief on the Merits at 27, *Thomas v. State*, No. PD-1086-15 (Tex. Crim. App. Mar. 16, 2016).

[8] It should be noted that this first question and answer *was* read back to the jury in response to their request. *See supra* note 3.

[Trancquena]:        Yes.

[Defense counsel]:   The person who's about to be shot?

[Trancquena]:        Yes.

[Defense counsel]:   And a person in a black shirt and in a white shirt, correct?

[Trancquena]:        Correct.[9]

Following our holding in *Jones v. State*,[10] the court of appeals held that the trial court erred by failing to read back this additional testimony from Johnson's cross-examination because it would have been responsive to the jury's request.[11]  Nevertheless, the court of appeals affirmed Appellant's conviction, holding that the trial court's error under Article 36.28 was harmless because the omission did not affect Appellant's substantial rights.[12]  The court of appeals came to this conclusion based on its observation that "the portion of

---

[9] We found other excerpts from Johnson's testimony that, although responsive to the jury's request, were not read back.  However, Appellant did not complain about the court's failure to read back any other portion of Johnson's testimony other than this excerpt from her cross-examination.

[10] 706 S.W.2d 664 (Tex. Crim. App. 1986).

[11] *Thomas v. State*, 470 S.W.3d 577, 587-88 (Tex. App.—Houston [1st Dist.] 2016) (holding that, "This testimony is responsive to the jury's request, and, despite the jury's request that the court read only testimony from the State's questioning of Johnson, the trial court should have read the additional testimony as well and erred in failing to do so").  The court also cited to our holding in *Jones*, wherein we held that trial court erred for failing to read excerpts from cross-examination of witness even though jury note specified to "[s]end [the jury] court records from the DA's questions." *Id*. (quoting *Jones*, 706 S.W.2d at 667-68).

[12] *Id*. at 588; *see also* TEX. APP. P. 44.2(b) ("Any [nonconstitutional] error, defect, irregularity, or variance that does not affect substantial rights must be disregarded").

Johnson's cross-examination that Appellant asserts the trial court should have read back to the jury did not contradict any of the three excerpts of Johnson's testimony that the trial court did read to the jury."[13]

We granted Appellant's petition for discretionary review challenging the harm analysis done by the First Court of Appeals—specifically, whether the court of appeals erred in holding that erroneously omitting testimony from a jury's request that testimony be read is harmful only if the excluded portion "contradicted" the selected excerpt.[14]

## ANALYSIS

Article 36.28 provides that, if the jurors disagree as to the testimony of any witness, they may have read to them that part of the witness's testimony that is in dispute.[15]  This Court has held that the purpose of Article 36.28 is "to balance our concern that the trial court not comment on the evidence with the need to provide the jury with the means to resolve any

---

[13] *Thomas*, 470 S.W.3d at 588.

[14] The State claims that this petition should be dismissed as improvidently granted because the court of appeals followed the correct standard and did not rule that the error in the reading of testimony was harmful only if the selected excerpt and the excluded excerpt are contradictory.  While the court of appeals did cite to the correct standard under Rule 44.2(b), its harm analysis focused on the lack of contradiction between what was read back to the jury and what was not.  We do not agree that our grant of review was improvident.

[15] TEX. CODE CRIM. PROC. art. 36.28 ("In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other.").

factual disputes it may have."[16]  When the jury asks the trial court to read back certain disputed testimony, the trial court judge must first determine if the jury's inquiry is proper under Article 36.28.[17]  If it is proper, the trial court must then interpret the communication and decide what sections of the testimony will best answer the inquiry.[18]  The trial court has discretion to decide "what sections of the testimony will best answer the query, and limit the testimony accordingly."[19]  However, if a trial court reads too much or too little testimony to the jury, such a response may serve to bolster the State's case unnecessarily.[20]  An appellate court should not disturb a trial court judge's decision under Article 36.28 unless a clear abuse of discretion and harm are shown.[21]

## A.    Preservation of Error

Appellant complained on direct appeal that the trial court should have read back Johnson's testimony on cross-examination wherein she stated that one of the four persons outside of Moses' apartment just before he was shot was a man in a white shirt.  The State

---

[16] *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005) (citing *Robison v. State*, 888 S.W.2d 473, 480 (Tex. Crim. App. 1994)).

[17] *Brown v. State*, 870 S.W.2d 53, 55 (Tex. Crim. App. 1994).

[18] *Id.*

[19] *Jones v. State*, 706 S.W.2d 664, 667 (Tex. Crim. App. 1986) (quoting *Iness v. State*, 606 S.W.2d 306, 314 (Tex. Crim. App. 1980)).

[20] *See id.* at 668 (reading too little testimony); *Pugh v. State*, 376 S.W.2d 760, 762 (Tex. Crim. App. 1964) (reading too much testimony).

[21] *Brown*, 870 S.W.2d at 55.

argued on direct appeal that this complaint by Appellant was not the same as Appellant's trial objection—that the trial court should have read testimony "relating to the number of people." The court of appeals decided, however, that because Appellant had made a general objection at trial that the testimony that was read back failed to include relevant excerpts from Johnson's cross-examination, he had preserved his argument.

The State now asserts that the court of appeals erred by rejecting the State's preservation claim and that it should not have addressed the merits of Appellant's complaint. Complaints about error in the reading of trial testimony must be preserved by objection at the time of the reading.[22] To preserve error, a party must object and state the grounds for the objection with enough specificity to make the trial judge aware of the complaint, unless the specific grounds were apparent from the context.[23] The objection must be sufficiently clear to give the judge and opposing counsel an opportunity to address and, if necessary, correct the purported error.[24] If a trial objection does not comport with arguments on appeal, error has not been preserved.[25]

---

[22] *Hollins v. State*, 805 S.W.2d 475, 476 (Tex. Crim. App. 1991).

[23] TEX. R. APP. P. 33.1(a)(1)(A).

[24] *Ford v. State*, 305 S.W.3d 530, 533 (Tex. Crim. App. 2009).

[25] *Goff v. State*, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996); *see also Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014).

It is true that Appellant's trial counsel specified on the record that he wanted the court to read to the jury "anything from cross and any type of redirect, and issue under the cross-examination or direct of Trancquena Johnson relating to the number of people." At that time, he said nothing on the record regarding the color of people's shirts or the man in the white shirt. But, we know from the discussion on the record that Appellant's trial counsel initially voiced, off the record, his objection to the court's reading of testimony. And, as to Johnson's testimony, Appellant's trial counsel did request on the record that "it be included in its entirety."

"Error preservation . . . is not an inflexible concept," and the application of error preservation rules should not be mechanically applied.[26] "The standards of procedural default are not to be implemented by splitting hairs in the appellate courts."[27] We hold that Appellant's objection at trial adequately complained of the trial court's failure to read back all of Johnson's testimony on direct, cross, and redirect, that would have been responsive to the jury's request. Therefore, we agree with the court of appeals that Appellant preserved his complaint. Since the court of appeals correctly determined that the trial court erred by not reading back portions of Johnson's testimony that would have been responsive to the

---

[26] *Heather Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013).

[27] *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (holding that "all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it").

jury's request, we now turn to the issue of whether the court of appeals properly assessed harm.

## B.     Categorizing Error under Article 36.28

Up until September 1, 1997, Texas Rule of Appellate Procedure 81(b)(2) provided a unitary standard of review applicable to all trial error.[28]  Before then, it would not have been necessary to categorize an Article 36.28 error in order to assess harm.[29]  Rule 44.2 replaced

---

[28] TEX. R. APP. P. 81(b)(2) required that, in all cases in which error is found, an appellate court shall reverse the judgment under review unless it determines, beyond a reasonable doubt, the error made no contribution to the conviction or to the punishment.

[29] In *Jones v. State*, 706 S.W.2d 664 (Tex. Crim. App. 1986), which was decided before Rule 44.2 was enacted, this Court held that the defendant was "deprived of a fair trial" because the trial court read back too little testimony. *Id.* at 668.  In *Jones*, the trial court responded to the jury's request for a witness's testimony by sending a note to the jurors telling them that a "bona fide dispute" must exist and instructing the jurors to pinpoint testimony by "which attorney was conducting the examination *or* the subject matter under dispute."  *Id*. at 666 (emphasis added by the Court in its opinion).   The jury in its next note identified the subject matter of the dispute, and added, "Send us court records from the DA's questions." *Id.*  Jones's counsel asked the trial court to have the court reporter read to the jury the witness's testimony on the disputed issue from both the direct and cross-examinations.  The trial court overruled his request.  The court of appeals agreed with the trial court's decision to limit the testimony read back to the jury, holding that, since the jury limited its request to the questions of the district attorney, the trial court did not abuse its discretion in so limiting the portion read to the jury.  However, this Court disagreed:

> Given the circumstances, the evidence offered, the well defined dispute expressed in the jury's note, and the court's somewhat confusing answer about identifying which attorney was conducting examination, Appellant's counsel's request and "exception," and the fact that the evidence on cross-examination clearly bore on the disputed issue, we conclude the trial court failed to give a realistic interpretation to the jury's note. While the trial court was undoubtedly being cautious, fairness did not prevail, and Appellant was deprived of a fair trial.  The trial court abused its discretion.

*Id.* at 668.  The "nonconstitutional" standard for determining harm set forth in Rule 44.2(b) did not exist when *Jones* was decided.  Although *Jones* still guides us when assessing whether error occurred under Article 36.28, we are not bound by *Jones* when assessing harm.  *DeGraff v. State*, 934 S.W.2d

Rule 81(b)(2) with a bifurcated standard that provides two avenues for harm analysis, depending on whether the type of error committed was constitutional or nonconstitutional ("other error").[30]

Appellant does not claim, and never has claimed, that the erroneous decision by the trial court to omit reading back to the jury some of Johnson's testimony on cross-examination was of constitutional dimension covered by Rule 44.2(a). Appellant urges us to—and we agree that we should—apply the standard for assessing harm pursuant to Rule 44.2(b).[31] Under that standard, reversal is required only if the trial court's Article 36.28 error affected Appellant's substantial rights.[32]

---

687 (Tex. Crim. App. 1996), was also decided before Rule 44.2(b) came into existence. In *DeGraff*, this Court vacated and remanded to the appellate court to conduct a harm analysis pursuant to Tex. R. App. Proc. 81(b)(2), holding that the court of appeals should not have summarily reversed on the ground that the trial court erroneously read testimony back to jury without first determining whether jurors were in dispute.

[30] "If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a). Rule 44.2(b) provides that "[a]ny other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." *Id*. at 44.2(b).

[31] TEX. R. APP. P. 44.2(b).

[32] We note that our decision is consistent with the intermediate appellate courts that have held that a violation under Article 36.28 is nonconstitutional. *Fox v. State*, 283 S.W.3d 85, 91 (Tex. App.—Houston [14th Dist.] 2009, pet ref'd) (recognizing "sister courts have held that error under [A]rticle 36.28 is harmless"); *Garden v. State*, No. 05-02-01672-CR, 2004 WL 346296, *2 (Tex. App.—Dallas 2004, no pet.) ("We disregard any error unless it affects [appellant's] substantial rights." (citing *Woodward v. State*, 996 S.W.2d 925, 929 (Tex. App.—Houston [1st Dist.] 1999, pet ref'd)) (not designated for publication)*; Warren v. State*, No. 05-99-01951-CR, 2001 WL 8870, at *5 (Tex. App.—Dallas 2001, pet. ref'd) ("Error regarding [A]rticle 36.28 is not constitutional error.") (not

## C.    Determining If Appellant's Substantial Rights Were Affected

"A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."[33] We have held that an error had a substantial and injurious effect or influence if it substantially swayed the jury's judgment.[34] The proper inquiry is "whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."[35] On the other hand, if "the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand."[36]

Neither Appellant nor the State has any formal burden to show harm or harmlessness under Rule 44.2(b).[37] Rather, it is the reviewing court's duty to assess harm after conducting a proper review of the record to determine the influence the error had in light of all the other evidence.[38]

---

designated for publication); *Walker v. State*, 994 S.W.2d 199, 205 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (holding that the error under Article 36.28 did not constitute the denial of a constitutional right and a harm analysis under Rule 44.2(a) is not required).

[33] *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997); *see also Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993) (identifying the proper standard as "whether the error 'had substantial and injurious effect or influence in determining the jury's verdict") (quoting *Kotteakos v. United States*, 328 U.S. 750, 764-65 (1946)).

[34] *King*, 953 S.W.2d at 271 (applying the test adopted by the United States Supreme Court in *Kotteakos v. United States* (citing *Kotteakos*, 328 U.S. at 764-65)).

[35] *Kotteakos*, 328 U.S. at 764.

[36] *Id.*

[37] *Burnett v. State*, 88 S.W.3d 633, 638 (Tex. Crim. App. 2002).

[38] *Id.* at 762.

The court of appeals began its harm analysis with the statement that "[e]rror under Article 36.28 is harmless 'where there is no variance between the direct testimony and cross-examination.'"[39] That is most likely always going to be a true observation. However, it is not the proper starting point for a harm analysis under Rule 44.2(b). Moreover, strict adherence to that observation could lead to the incorrect assumption and conclusion that the inverse—error is harmful where there is a variance—is also going to be true.

In this case, there *was* a variance between Johnson's direct testimony that was read to the jury and the excerpt from her cross examination that was not read to the jury. The portion that was not read to the jury included the additional testimony that one of the four people in front of Moses's apartment immediately before he was shot was a female, and one of the four persons had on a white shirt. The court of appeals decided that, because the portion of Johnson's cross examination that was not read to the jury did "not contradict any

---

[39] *Thomas v. State*, 470 S.W.3d at 588 (quoting *Fox v. State*, 283 S.W.3d 85, 91 (Tex. App.—Houston [14th Dist.] 2009). In Fox, the Fourteenth Court of Appeals noted that "two of [its] sister courts have held that error under Article 36.28 is harmless where there is no variance between the direct testimony and cross-examination." *Id*. (citing *Phelps v. State*, No. 01-89-00235-CR, 1990 WL 24898, *3-4 (Tex. App. Houston [1st Dist.] 1990, no pet) (not designated for publication); *Martin v. State*, 732 S.W.2d 743, 747 (Tex. App. Fort Worth 1987), *vacated on other grounds*, 760 S.W.2d 662 (Tex. Crim. App. 1988) (examining the entire record to find "nothing in the cross-examination . . . varies in any way from the testimony actually re-read to the jury").

of the three excerpts of Johnson's testimony that the trial court did read to the jury,"[40] the trial court's error was harmless.[41]

However, the harm analysis in this case should not hinge solely on the lack of contradiction between the testimony read back and the testimony not read back. A variance in what is read and what is not read could mean the error is harmful even if there was no contradiction. That is why a proper harm analysis requires a review of the entire record, including the weight of the evidence of Appellant's guilt, in order to determine whether the trial court's erroneous omission of testimony that varied from that which was read back to the jury affected Appellant's substantial rights. In assessing the likelihood that the jury's decision was adversely affected by the error, the reviewing court should consider all of the testimony and physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, and closing arguments.[42] If, after a review of the record as a whole, the appellate court can say that it "has fair assurance that

---

[40] *Thomas*, 470 S.W.3d at 588.

[41] We recognize that the court of appeals did cite to Rule 44.2(b) and it did conclude that Appellant's substantial rights had not been affected.

[42] *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000); *Llamas v. State*, 12 S.W.3d 469, 471 (Tex. Crim. App. 2000) ("To judge the likelihood that harm occurred, appellate courts must consider everything in the record, including all the evidence admitted at trial [and] the closing arguments . . . .").

the error did not influence the jury, or had but a slight effect," then the error is harmless.[43]

## D.      Examination of The Entire Record

Appellant claims that the trial court's failure to read back a part of Johnson's cross examination testimony—that one of the four people outside of Moses's apartment was a man in a white shirt—virtually eliminated his defensive theory.  We do not agree.

Throughout the entire trial, it was clear that Appellant's theory of defense was that he did not shoot Moses; that Carnell Meredith, acting alone, was the shooter.  Appellant was permitted to present evidence through witnesses other than Johnson that Carnell Meredith was a co-defendant in this case who had already pled guilty to the charge of murder.  Appellant's trial counsel was permitted to argue in closing that Carnell Meredith was present when Moses was shot and had pled guilty to committing the murder:

> What you have here is a one-man murder with two people charged and one
> man has already pled guilty to it.  Carnell Meredith has stood in front of a
> Judge and pled guilty to a one-man murder. . . . Only one person is responsible
> for this, and that person is already behind bars. . . . And did I mention that
> Carnell Meredith has already pled guilty to this?  We don't know where he
> went.  There's no testimony about what he did.  He broke left beside that
> building.  He could have gone right or left or back the other way. . . . The
> bottom line, folks, as we talked about this, is that this is a one-man murder
> with two men charged.  And what the police department does not get to do is
> charge two different people and then say, gosh, just let the jury figure it out.
> They made their accusations, and one of them agreed to it.  He said, yeah, I

---

[43] *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002) (citing *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001) and *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

plead guilty. I'm responsible. One man is already guilty. So if you do the math, that means that the other is not.

The jury heard testimony from witnesses other than Trancquena Johnson that there was a man, Carnell Meredith, at the scene in a white shirt. Brandon Lusk testified that he saw Moses and a man in a white shirt together outside Moses' apartment when he came home that night. Although there was testimony that Carnell Meredith was wearing a white shirt, this fact was not emphasized, nor even mentioned, in trial counsel's closing argument. Johnson's testimony did not in any way support Appellant's theory of defense that Carnell Meredith was the one who shot Moses. She did not know Carnell Meredith and could not verify that he was the one in a white shirt.

It is more likely that the jury's confusion (and, hence, request for a reading of Johnson's testimony) may have been over there being another man in a black shirt. Brandon Lusk stated that, after he heard gunshots, he saw a man in a black shirt holding a gun walk by his apartment. But the jury heard testimony from Johnson and Reliford that, after Appellant shot Moses, he ran past them, which was in a different direction from Lusk's apartment. The written request by the jury for a reading of testimony regarding the number of people and the color of their shirts had originally specified that they wanted testimony from Brandon Lusk. But, on the form, the name "Brandon Lusk" was crossed out and replaced with "Trancquena Johnson."

In closing, Appellant's trial counsel argued that a second person, one in a black shirt,

was "out there." He asserted that Brandon Lusk, a credible witness, saw a man, one shorter than Appellant, in a black shirt "going down the opposite side of the building with a gun immediately after the shots are being fired." The prosecution acknowledged in closing that the man Brandon Lusk saw walk by his apartment wearing a black shirt and holding a gun was not Appellant. "I submit to you in that area, in that apartment complex, there's probably a lot of people running around with guns." Our reading of the record reflects no confusion in the testimony about there being a man present in a white shirt. But it does suggest that there may have been some confusion about there being more than just one man in a black shirt.

Nowhere did Johnson testify that she saw anyone in a black shirt other than Appellant. Johnson testified repeatedly that she saw Appellant, who was wearing a black shirt, shoot Moses. At no time did Johnson's testimony waver on the fact that Appellant was the one she saw shoot Moses. Johnson said that she got a "good look" at Appellant as he shot Moses. Although Appellant places great weight on Johnson's testimony that one of the four people standing outside Moses' apartment was a man in a white shirt, we find that such statement by Johnson was an insignificant portion of her testimony. The trial court's failure to read back that one answer by Johnson on cross-examination could not have had but a slight effect on the jury's decision, if any at all.

This is true, particularly in light of the eyewitness testimony of Reliford, whose testimony the jury did not request. Reliford testified unequivocally that he saw Appellant shoot Moses. Reliford testified that, earlier in the day, he had observed Appellant, Appellant's girlfriend Ciarra Vallery, and "a couple of other guys" arguing with Moses about money.[44] Reliford said the group had been arguing off and on all day. He also observed Appellant and his girlfriend arguing just before Appellant and two other men came down the apartment steps and walked over to Moses's apartment. Reliford said that Ciarra was crying and telling Appellant, "don't do it." Reliford did not remember the color of Appellant's shirt (or anyone else's shirt), and he was not clear on exactly how many people were around Moses's apartment immediately before he was shot—at one time Reliford said four and at another time he said five. But Reliford did not vary from his testimony that he saw Appellant pull out a gun and shoot Moses in the head.

We hold that the information elicited from Johnson on cross-examination in the brief excerpt of testimony that was not read to the jury was not so crucially important as to prove or disprove either the prosecution's or defense's theories in the case, nor did it prove or disprove an essential element of the crime charged. Additionally, nothing Johnson said on cross-examination undermined her direct testimony or rendered it potentially misleading. Nor did the partial reading serve to emphasize a version of events favorable to the State and

---

[44] In response to the prosecutor's question asking whether he paid attention to what they were talking about, Reliford responded, "Yes, ma'am. I'm nosey."

diminish a version favorable to the defense. While we agree that Johnson's testimony on cross-examination—that one of the four people she saw outside of Moses's apartment when he was shot was a man who had on a white shirt—should have been read back to the jury in response to their request, the omission of such testimony from what was read back did not have a substantial or injurious effect.

## CONCLUSION

After reviewing the entire record, we have a fair assurance that the trial court's error under Article 36.28 did not influence the jury's verdict. Because such error did not affect Appellant's substantial rights, it was harmless. We affirm the judgment of the First Court of Appeals.

DELIVERED:      November 9, 2016

PUBLISH