**Affirm and Opinion Filed June 15, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01131-CR**

**RAY DON WILSON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 291st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1875289-U**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Nowell
Opinion by Justice Nowell

A jury convicted Ray Don Wilson of murdering Princess White and sentenced him to seventy years' confinement. In a single issue, appellant argues the trial court abused its discretion by overruling his evidentiary objection to testimony presented at trial. We affirm the trial court's judgment.

### FACTUAL BACKGROUND

Appellant was in an on-again/off-again relationship with Princess White for approximately nine years, and they were sharing an apartment on February 25, 2018, when White died from multiple gunshot wounds.

Appellant and White kept guns in the bedroom and main living space of their apartment. A witness testified: "They wasn't [sic] handguns. They were kind of on the bigger side." White's sister, Nellie Simmons, testified that White usually carried a black handgun and appellant had a favorite gun he called "El Chapo."

Simmons testified the couple had ongoing "trust issues." In January 2018, White and appellant had a "falling out" after appellant learned that White sent money to an ex-boyfriend who was incarcerated. Simmons explained that White "wanted her king"[1] and she wanted to have children with appellant, but if their relationship was not successful, then White "would like to be with this person that's in prison." White briefly moved out of the apartment in January or early February 2018.

On the day she was killed, White spent time with Simmons and appellant. White and Simmons got into an argument, and Simmons accused White of having had sex with a man named Harvey; appellant was present when Simmons made the accusation.

Kimberly Pye, a friend of White's, talked to White on the phone after 9:00 p.m. on February 25. White sounded like she had been crying. White "was upset because she said that her sister told [appellant] that she was messing with the plug[2] and [appellant] believed her." After a few minutes, White said she needed to get off of the phone because "[T]here go my king." Pye interpreted White's statement to

---

[1] Several witnesses testified that White referred to appellant as her "king."

[2] Pye explained "the plug" is "the person [White] was getting her drugs from."

mean that appellant was walking up the stairs to their apartment, and White could see his approach via the camera above their front door.

Genetra Carter received a Facebook call from White at 9:54 p.m. on February 25. White sounded distressed and told Carter appellant was with her. She asked Carter to explain White's familial relationship with Harvey. Carter testified: "I said, That's our cousin. I hear blank silence on the phone and the next thing I know, she got - - she gets back on the phone and she's like, Aunt G, Ray just shot me." Carter also described the "blank silence" as a "loud echo" and as "loud, muffled noises"; Carter analogized it to the sound produced when someone drops a phone and is trying to retrieve it. Carter testified she then heard White "gurgling and gasping for breath. And so I ran downstairs to get the other phone, my mom's phone. And I told my mom, [White] just said that Ray shot her. And so I called 911 on the other phone." Carter stayed on the phone with White, but White did not speak again. At some point, the call dropped and Carter tried to call White back, but White did not answer.

When the police entered the apartment, they found White's body on the floor just inside the front door. The apartment "looked like there might have been a struggle," but there were no signs of forced entry and appellant was not in the apartment. Neighbors who lived downstairs said they heard gunshots.

The police did not see any firearms in the living area of the apartment. However, one officer noticed bullet holes near the kitchen. He testified: "it looked

to be like if someone had shot with a shotgun through, you know, the ceiling area." He speculated the damage was from a shotgun because "[t]he amount of holes in the area . . . in the ceiling. There was [sic] small, like, pellet-size holes" similar to birdshot. The jury saw pictures of the apartment, including pictures showing the bullet holes in the walls and ceiling.

Detective Kevin Burkleo of the Irving Police Department obtained appellant's T-Mobile account records. Burkleo observed that appellant's cell phone left the area near the apartment approximately three minutes after the offense was thought to have occurred and continued moving away from the apartment. Burkleo created an animation using appellant's cell phone data "so that [the jury] could see the call progression of the phone leaving the area."

Appellant was not at the apartment when the police arrived, and a detective was assigned to locate him. During her search, the detective discovered a woman who she believed was in an on-again/off-again relationship with appellant. When the detective went to the woman's apartment, she saw appellant get into a car along with other people from the apartment. The police stopped their vehicle, and appellant was removed from the vehicle without incident and taken into custody. Appellant did not ask the officers why he was being arrested.

LAW & ANALYSIS

Appellant agues the trial court abused its discretion by overruling his objection to testimony from Nellie Simmons. Appellant asserts some of her

testimony violated Texas Rule of Evidence 404(b), and, by permitting the testimony, the trial court forced him to testify in his own defense in violation of his Fifth Amendment right to remain silent. The State responds that the evidence was admissible pursuant to article 38.36 of the code of criminal procedure.

During Simmons's testimony, the State asked Simmons about an incident in January 2018 between appellant and White. After appellant objected, the court held a hearing outside the presence of the jury during which Simmons testified. In January 2018,[3] White called her and White said: "Girl, Ray. Ray shooting. He trying to shoot me. He trying to kill me." Simmons could hear appellant loudly calling White's name.

Simmons was at their mother's house when she received the call, and she told White to drive there. When White arrived, White told Simmons and their mother that White and appellant "had smoked some PCP that day and he [appellant] rigged out and started tripping." The women then went to White's apartment. Simmons went inside the apartment and found appellant disoriented from drug use. Simmons testified: "So [White] is showing me all the bullet holes in the house." Simmons and White left the apartment, White took Simmons and their mother back home, and then White returned to the apartment and cleaned up the mess created by appellant shooting his gun inside. Later White called Simmons and said she had cleaned up

---

[3] Simmons did not know the date of the incident, but testified it was within three weeks to one month of the date when White was killed.

and fixed the apartment so no one could tell what happened and appellant would not be embarrassed. Simmons went back to the apartment the following day and thought White had done "an amazing job covering up the holes" and cleaning up the dry wall from the floor.

After Simmons's testimony, the trial court heard arguments from appellant and the State. The court overruled appellant's objections to the testimony, and Simmons testified about the January 2018 event in the presence of the jury. While no limiting instruction was given at the time of Simmons's testimony, the jury charge includes an instruction about extraneous offenses.

An appellate court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). When a trial court admits evidence in violation of evidentiary rules, that admission of evidence is non-constitutional error. *Delgado v. State*, 635 S.W.3d 730, 754 (Tex. App.—Dallas 2021, pet. ref'd) (quoting *Jones v. State*, 111 S.W.3d 600, 604 (Tex. App.—Dallas 2003, pet. ref'd)). We disregard any non-constitutional error that does not affect a defendant's "substantial rights." TEX. R. APP. P. 44.2(b); *Delgado*, 635 S.W.3d at 754. A substantial right is affected if an error has a substantial and injurious effect or influence in determining the jury's verdict. *Delgado*, 635 S.W.3d at 754 (citing *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016)). Substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole,

has fair assurance that the error did not influence the [fact finder], or had but a slight effect." *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); *see also Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014) ("A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict."). When assessing the likelihood that the jury's decision was adversely affected by the error, we must "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case." *Motilla*, 78 S.W.3d at 355.

Even if we assume for the purposes of this appeal that the trial court abused its discretion by admitting Simmons's testimony about the January 2018 incident, we conclude the error did not affect appellant's substantial rights.

Simmons testified without objection that appellant and White had ongoing "trust issues," and, in January 2018, appellant and White had a "falling out" after appellant learned that White sent money to an ex-boyfriend. On the day White was killed, Simmons accused White of having sex with another man; appellant was in the car when Simmons lodged the allegation.

A few hours later, White told Carter that appellant was with her, asked about her familiar relationship to the man she allegedly had sex with, and then said

appellant shot her. After White said appellant shot her, Carter heard White "gurgling and gasping for breath." White did not say anything else.

When the police arrived, they found White's body and the apartment showed signs of a struggle. Although appellant was not present, his cell phone records showed he had been in the vicinity of the apartment. Shortly after the time when White was believed to have been shot, appellant's cell phone moved away from the apartment.

The jury also heard testimony that there were several guns in the apartment and the walls and ceiling appeared to have sustained damage from shotgun shots. The jury saw pictures of the damaged walls and ceiling.

Finally, the jury charge included an instruction about extraneous offenses. We generally presume that the jury follows the trial court's instructions in the manner presented. *Davis v. State*, 581 S.W.3d 885, 894 (Tex. App.—Dallas 2019, pet. ref'd) (citing *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005)). An appellant may refute this presumption, but he must do so by pointing to evidence that the jury failed to follow the instruction. *Id.* (citing *Thrift*, 176 S.W.3d at 224). No such evidence was identified in this case.

Having reviewed the entire record, we cannot conclude the admission of Simmons's testimony about which appellant complains affected appellant's substantial rights. While appellant argues the admission of that evidence forced him

to testify in his own defense in violation of his Fifth Amendment right, nothing in the record supports this claim. We overrule appellant's sole issue.

CONCLUSION

We affirm the trial court's judgment.

/Erin A. Nowell//
ERIN A. NOWELL
JUSTICE

191131f.u05
Do Not Publish
TEX. R. APP. P. 47.2(b)



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RAY DON WILSON, Appellant

No. 05-19-01131-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 291st Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1875289-U.
Opinion delivered by Justice Nowell. Justices Partida-Kipness and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 15ᵗʰ day of June, 2022.