**Affirmed and Majority and Dissenting Opinions filed November 26, 2019.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-18-00162-CR

**VINCENT DEPAUL STREDIC, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause No. 1530454**

## MAJORITY OPINION

A jury found Vincent Depaul Stredic guilty of murder, found two punishment enhancements true, and assessed punishment at thirty years' confinement. Appellant contends that: (1) the trial court erred by providing the jury with a written transcript of disputed testimony during deliberations; (2) the evidence is insufficient to support one of the punishment enhancements; and (3) the statute that authorizes Harris County to retain a ten-percent service fee for collecting certain court costs is unconstitutional. We affirm.

# I.  BACKGROUND

Appellant drove some friends, including the complainant Christopher Joel Barriere and Rodrick Harris, to a gas station. Appellant went inside to make a purchase. When he returned, Harris was smoking PCP inside appellant's car. Appellant told Barriere and Harris to get out of his car because he did not want to be around the PCP. Barriere and Harris refused to get out, so appellant opened his trunk and pulled out a loaded shotgun.

At some point during the argument, Barriere and Harris exited the car. Barriere walked toward appellant. Appellant raised his gun. The gun discharged, hitting Barriere and killing him. When the gun discharged, Harris was walking away from appellant. According to appellant's testimony at trial, he raised the gun just to scare Barriere and make sure no one got back in the car. Appellant claimed that "this was an accident." After appellant shot Barriere, Harris charged at appellant. Appellant pointed the gun at Harris, and Harris "stopped coming at" appellant. Then appellant drove away. According to appellant, when he returned to the scene, he was in "panic mode." When Harris "came at [appellant] again," appellant also shot Harris.

Appellant was indicted and tried for the murder of Barriere. Appellant's indictment contained two enhancement paragraphs, including that appellant was previously convicted on February 5, 1999, of felony burglary of a habitation.

At trial, the jury charge included instructions for murder and the lesser-included offenses of manslaughter and criminally negligent homicide. Appellant's trial counsel urged the jury to consider criminally negligent homicide because the State failed to prove appellant's culpable mental state for murder.

During deliberations, the jury informed the trial court that it disagreed about appellant's testimony. The jury asked to "see the court reporter's notes when [appellant] was the witness, when the State Attorney was questioning him regarding his statement on if [appellant] felt threatened by . . . Barriere and . . . Harris." The trial court planned to respond: "The Court will provide you readback concerning the defendant and the statement in dispute by transcript."

Appellant objected to providing the jury with a written transcript under Article 36.28 of the Code of Criminal Procedure, arguing that the written transcript emphasized and placed more importance on the testimony. He argued that the trial court was commenting on the weight of the evidence. When the trial court asked whether there were any objections to the "content of the transcript," appellant responded: "No objection to the content that will be provided in response to the jury's question."

The trial court provided approximately four pages of written transcript excerpts to the jury. In relevant part, appellant's testimony on direct indicated that Barriere took a couple of steps toward appellant and appellant was afraid. Appellant's testimony on cross indicated that Harris told appellant "you're not going to leave me here" and charged appellant. Appellant was holding the gun but pointed it up in the air, not at Harris. Appellant's testimony on re-direct indicated he was scared when Barriere was coming towards him. Appellant's testimony on re-cross indicated that when the "gun went off the first time," Harris was walking away from appellant; appellant was not trying to defend himself with the gun, and it "just accidentally went off." Appellant testified on further re-direct that he was trying to defend himself by raising the gun and showing it to Barriere and Harris.

The jury found appellant guilty of murder. During the punishment phase, the State proffered, and the trial court admitted, appellant's stipulation that certain

3

State's exhibits "constitute true and correct evidence" and each exhibit "truthfully sets forth sentences and judgments for crimes for which I have been convicted." These exhibits included a judgment and sentence dated October 27, 1997, for felony burglary of a habitation, wherein appellant's sentence was probated. The evidence included a judgment revoking probation dated February 5, 1999, which revoked appellant's probation for the 1997 burglary, and wherein appellant was sentenced to five years' confinement. The evidence included another judgment for felony possession of a controlled substance, as alleged in the indictment. The jury found both enhancement paragraphs true and assessed appellant's punishment at thirty years' confinement.

In the judgment, the trial court ordered appellant to pay court costs. The record includes a bill of costs, which includes an assessment of $133 for consolidated court costs, $4 for the jury reimbursement fee, and $2 for the support of indigent defense.

Appellant timely appealed.

## II.   ARTICLE 36.28

In his first issue, appellant contends that the trial court erred by providing the deliberating jury with a written transcript of testimony from the trial. Appellant contends that providing a written transcript to the jury, rather than providing an oral readback of testimony, violated Article 36.28, and this non-constitutional error was harmful. Assuming without deciding that the trial court erred, we hold that appellant was not harmed.

In full, Article 36.28 provides:

In the trial of a criminal case in a court of record, if the jury disagree as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other; but if there be no such reporter, or if his notes cannot be read to the jury, the

4

court may cause such witness to be again brought upon the stand and the judge shall direct him to repeat his testimony as to the point in dispute, and no other, as nearly as he can in the language used on the trial.

Tex. Code Crim. Proc. art. 36.28.

"The purpose of Article 36.28 is 'to balance our concern that the trial court not comment on the evidence with the need to provide the jury with the means to resolve any factual disputes it may have.'" *Thomas v. State*, 505 S.W.3d 916, 923 (Tex. Crim. App. 2016) (quoting *Howell v. State*, 175 S.W.3d 786, 790 (Tex. Crim. App. 2005)). "An appellate court should not disturb a trial court judge's decision under Article 36.28 unless a clear abuse of discretion and harm are shown." *Id.*

Error under Article 36.28 is non-constitutional and subject to a harm analysis under Rule 44.2(b). *Id.* at 924–25; *see* Tex. R. App. P. 44.2(b). Therefore, we must disregard the error if it does not affect appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Thomas*, 505 S.W.3d at 926 (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). Thus, we must ask whether the error itself had a substantial influence on the verdict. *See id.* A proper harm analysis requires a review of the entire record, including the weight of the evidence of the defendant's guilt. *Id.* at 927. And, we must consider the character of the error. *Id.*

Appellant does not contest that Article 36.28 applied or that the jury disagreed about the testimony. Appellant does not contend that the jury required additional or less testimony to resolve its disagreement. Nor does appellant dispute the content or accuracy of the transcripts. Indeed, appellant had "[n]o objection to the content that will be provided in response to the jury's question." Rather, appellant argues that the jury's review of the testimony in written form "may have substantially swayed the

5

jury to believe that Mr. Stredic's shooting of Mr. Barriere was intentional or knowing." Appellant contends, "If not for the emphasis on this testimony, the jury may quite possibly have found Mr. Stredic guilty of only manslaughter or criminally negligent homicide."

Here, it was the jury—not the trial court—that emphasized the importance of the disputed testimony by requesting the court reporter's notes. It was the jury that faced disagreement regarding what appellant's testimony revealed about his intent. Judging the facts, believing or disbelieving witness testimony, and resolving conflicts in the evidence all fall squarely and exclusively within the role of the jury as fact finder. *Jackson v. State*, 105 S.W.3d 321, 327 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). Accordingly, the jury properly asked the trial court to help it resolve a factual dispute. *See* Tex. Code Crim. Proc. art. 36.28; *Thomas*, 505 S.W.3d at 923.

The jury received in written form the same excerpts of appellant's testimony that properly would have been read aloud. Appellant cites no authority holding that the method of communicating evidence to the jury during deliberations—written transcript rather than oral readback—amounted to undue emphasis of the testimony sufficient to undermine the jury's verdict. The only Texas authority is to the contrary. *See Miller v. State*, 128 Tex. Crim. 129, 131–32, 79 S.W.2d 328, 330 (1935) (regarding predecessor statute, "The mere fact that the court at the request of the jury permitted the [trial] transcript to go into the jury room to be read by the jury themselves would in and of itself not be reversible error, unless the appellants could show some injury to themselves by said action of the court."); *Higdon v. State*, 764 S.W.2d 308, 310 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (holding that the defendant was not harmed when the trial court sent a particular witness's testimony to the jury in the form of a transcript in light of the fact that the trial court also sent

6

transcripts of other witness testimony to the jury); *cf. Jones v. State*, 402 S.W.2d 191, 193–94 (Tex. Crim. App. 1966) (noting that the trial court answered the jury's questions about how the witnesses testified in written form rather than reading aloud testimony in open court; reasoning that the court's action was "nothing more than furnishing the jury with certain testimony," that the trial court's memoranda were accurate, and "[w]hile the testimony was not read to the jury in open court, as provided by the statutes, there is no showing of injury to appellant as a result of such failure").

Even if providing the testimony in written form emphasized it more than orally reading it to the jury, the emphasis reached all of appellant's testimony about whether he felt threatened. The transcripts included appellant's testimony as elicited by both his trial counsel and the State. Thus, any emphasis was not one-sided such that the trial court would have been unduly emphasizing the State's evidence. *See Higdon*, 764 S.W.2d at 310 ("Because the trial court treated testimony both beneficial and adverse to the appellant in a similar manner, we cannot find, as appellant suggests, that the trial court's unorthodox methods [of giving trial transcripts to the jury during deliberations] constituted unfair bolstering of testimony prejudicial to him.").

Moreover, the transcripts did not comprise all of the evidence from which the jury could have reasonably inferred that appellant's shooting Barriere was intentional or knowing. In addition to testimony from appellant, the jury heard from six State's witnesses, including the officer dispatched to the scene, a crime scene investigator, a forensic multimedia analyst, a homicide detective, a medical examiner, and an eyewitness regarding appellant's words, acts, and conduct before, during, and after his shooting Barriere. The jury also saw surveillance video and still

7

shots from the gas station, an audio recording of the 9-1-1 call, a video of appellant's statement, and the autopsy report and photographs.

During closing, the State did not unduly highlight appellant's trial testimony regarding his intent. Instead, the State focused on appellant's actions:

> So that leaves us with that last element. Did unlawfully, intentionally and knowingly. We talked about during voir dire how we prove intent in a case, and it's not the defendant's sitting there professing exactly what he intended or what he knew was going to happen.
>
> We talked about how you can form—you can infer it from a person's words, their actions, the circumstances surrounding the event. That's the sort of thing that we use to make a determination on what a person's intent is. And I think the defendant's actions in this case, his actions both before, during and after the incident show exactly what he intended on that night.

After reviewing the record as a whole, we are fairly assured that any error from providing the jury with written transcripts—rather than reading the transcripts aloud—did not influence the jury or had but a slight effect and that appellant's substantial rights were not affected. *See Thomas*, 505 S.W.3d at 927. The alleged error was not harmful.

Appellant's first issue is overruled.

### III.   SUFFICIENCY OF EVIDENCE FOR ENHANCEMENT PARAGRAPH

In his second issue, appellant contends that the evidence is insufficient to support the jury's finding that he was convicted of felony burglary of a habitation on February 5, 1999, so the punishment range should have been for a repeat offender rather than a habitual offender.[1] Appellant argues that there is a distinction between

---

[1] Appellant does not challenge the jury's finding of true regarding the conviction for felony possession of a controlled substance.

a "conviction" and a "final conviction," the latter of which is required to enhance a sentence under the habitual offender statute. *See* Tex. Penal Code § 12.42(d). Appellant contends that the State alleged a "conviction" date of February 5, 1999, in the indictment although the State proved a "conviction" date of October 27, 1997. Thus, appellant contends that there was "a variance between the proof and the allegations as to the date" of the conviction, rendering the evidence insufficient.[2]

Appellant concedes that the 1997 conviction became final for purposes of enhancement on February 5, 1999, when his probation was revoked. *See Ex parte Pue*, 552 S.W.3d 226, 231 (Tex. Crim. App. 2018) (noting that a probated sentence becomes a final conviction for purposes of Section 12.42(d) when probation is revoked). Thus, for purposes of Section 12.42(d), appellant's "conviction" occurred on February 5, 1999. *See id.* The State properly alleged the date of the final conviction—here, February 5, 1999—in the enhancement paragraph of the indictment. *See Burton v. State*, 493 S.W.2d 837, 839–40 (Tex. Crim. App. 1973) (holding that the proper date to allege in an enhancement allegation is the date that the sentence was imposed after revocation of probation, rather than the date of the original judgment of conviction).

The trial court admitted a judgment dated February 5, 1999, which revoked appellant's probation for the offense of burglary of a habitation. Thus, there was no variance between the allegation in the indictment and the proof in this case, and the evidence is sufficient.[3]

---

[2] *See Roberson v. State*, 420 S.W.3d 832, 840–41 (Tex. Crim. App. 2013) (applying the immaterial variance doctrine to punishment enhancements alleged for purposes of habitual offender punishment under Section 12.42(d))

[3] Even if there were a variance, it would be immaterial and therefore not render the evidence insufficient because appellant was not prejudiced. *See Burton*, 493 S.W.2d at 839–40 (no reversible error when the State alleged the date of the original conviction, rather than the proper date of the imposition of the sentence following revocation of probation, because the defendant

Appellant's second issue is overruled.

## IV.   Court Costs

In his related third and fourth issues, appellant brings a facial challenge to the constitutionality of Section 133.058(a) of the Local Government Code, which authorizes municipalities and counties to retain a ten-percent "service fee" for collecting court costs. Specifically, appellant challenges the constitutionality of the statute relating to the retention of a service fee for collecting the consolidated court cost (issue three) and the fees for jury reimbursement and support of indigent defense (issue four).

Whether a statute is facially unconstitutional is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). We presume that the statute is valid and that the Legislature did not act unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002); *see also* Tex. Gov't Code § 311.021. The party challenging the statute has the burden to establish its unconstitutionality. *Peraza v. State*, 467 S.W.3d 508, 514 (Tex. Crim. App. 2015).

In a facial challenge, the challenger must establish that "no set of circumstances exists under which the statute would be valid." *Id.* Because a facial challenge attacks a statute's validity in all circumstances, it is "the most difficult challenge to mount successfully." *See Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App. 1992).

---

was not misled by the allegation); *Simmons v. State*, 288 S.W.3d 72, 80 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("A variance in dates of conviction is not fatal when there is no surprise or prejudice to the defendant."); *see also Wheatley v. State*, No. 14-09-00056-CR, 2010 WL 2332136, at *9–10 (Tex. App.—Houston [14th Dist.] June 10, 2010, no pet.) (mem. op., not designated for publication).

The Texas Constitution guarantees separated powers among the three branches of government. *See* Tex. Const. art. II, § 1; *Salinas v. State*, 523 S.W.3d 103, 106 (Tex. Crim. App. 2017). When one branch of government assumes or is delegated a power more properly attached to another branch, that assumption or delegation of power violates the separation of powers. *Salinas*, 523 S.W.3d at 106–07. If a statute turns the courts into "tax gatherers," then the statute delegates to the courts a power more properly attached to the executive branch. *Id.* at 107.

"As this court recently concluded, two types of court-cost statutes pass constitutional muster: (1) statutes under which a court recoups expenditures necessary or incidental to criminal prosecutions; and (2) statutes providing for an allocation of the costs to be expended for any legitimate criminal justice purpose." *Johnson v. State*, 573 S.W.3d 328, 333–34 (Tex. App.—Houston [14th Dist.] 2019, pet. filed); *see Peraza*, 467 S.W.3d at 517–18.

Section 133.058(a) provides: "Except as otherwise provided by this section, a municipality or county may retain 10 percent of the money collected from fees as a service fee for the collection if the municipality or county remits the remainder of the fees to the comptroller within the period prescribed by Section 133.055(a)." Tex. Loc. Gov't Code § 133.058(a); *see id.* § 133.003 (outlining "criminal fees" governed by Chapter 133). Essentially, this means that Harris County can retain ten percent of certain criminal fees as a service fee for collecting those fees for the State.

Appellant contends that the service fee violates the separation-of-powers provision of the Texas Constitution because Section 133.058(a) does not direct the fee to be spent for a legitimate criminal justice purpose. As appellant points out,

Section 133.058(a) is silent regarding where the service fee proceeds are to be directed.[4]

However, the service fee authorized by Section 133.058(a) is to be retained by counties for "the collection" of fees, which includes collection of the criminal court costs outlined in Section 133.003. *See id.* § 133.058(a); *see also id.* § 133.003(1), (8), (10) (Chapter 133 applies to criminal fees for the consolidated fee, the jury reimbursement fee, and the indigent defense fee). Thus, the fees "are imposed by virtue of a defendant's conviction and thus are attendant to a criminal court proceeding." *See Johnson*, 573 S.W.3d at 339 (facially constitutional statute authorized certain officers of the court or a community supervision department to assess up to a $2 administrative fee for each transaction related to the collection of court fees or costs). The service fee authorized by Section 133.058(a) is a recoupment of criminal prosecution expenses. *See Moliere v. State*, 574 S.W.3d 21, 31–32 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (facially constitutional statute required defendant to pay a $40 service fee to the clerk of the court for clerical duties, including for taxing costs against the defendant).

Appellant has not demonstrated that Section 133.058(a) operates unconstitutionally in every instance. Therefore, we conclude that Section 133.058(a) is not facially unconstitutional.

Appellant's third and fourth issues are overruled.

---

[4] Appellant does not contend that the underlying statutes authorizing the consolidated court costs and jury reimbursement and indigent defense fees are unconstitutional.

## V.   CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.


/s/     Ken Wise
Justice


Panel consists of Justices Wise, Zimmerer, and Spain. (Spain, J., dissenting).

Publish—Tex. R. App. P. 47.2(b).