

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00105-CR

DYLAN SIMPSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 18F0093-202

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

MEMORANDUM OPINION

A Bowie County jury convicted Dylan Simpson of online solicitation of a minor and sentenced him to twenty years' imprisonment. *See* TEX. PENAL CODE ANN. § 33.021. On appeal, Simpson argues that (1) the trial court erred in allowing the State to amend the indictment to contain additional or different manner and means of committing the offense, (2) the trial court erred in admitting extraneous acts committed against other children after an Article 38.37 hearing, (3) the trial court erred in admitting evidence amounting to improper bolstering, (4) the evidence is legally insufficient to support the verdict of guilt, and (5) there was jury-charge error.

We find Simpson's first three issues unpreserved, conclude the evidence legally sufficient to support Simpson's conviction, and determine that Simpson was unharmed by any alleged jury-charge error. As a result, we affirm the trial court's judgment.

## I. Simpson's Complaints About the Amended Indictment Are Unpreserved

The original indictment for online solicitation of a minor alleged that Simpson,

> on or about <u>November 29, 2017</u>, did then and there, being a person who was 17 years of age or older, with the intent to commit <u>the offense of sexual assault</u> intentionally communicate <u>by text message</u> in a sexually explicit manner, namely engaging in a sexually explicit conversation with <u>Judy Green (pseudonym)</u>.

Twenty days before trial, the State moved to amend the indictment. After the trial court granted the State's motion, the amended indictment for online solicitation of a minor alleged that Simpson,

> on or about <u>November 29, 2017</u>, did then and there, being a person who was 17 years of age or older, with the intent to commit the offense [of] <u>aggravated sexual assault and/or indecency with a child by sexual contact</u>, intentionally communicate <u>over the internet and/or by electronic mail and/or by text message and/or by an electronic message service or system and/or through a commercial online service</u>, in a sexually explicit manner, namely by <u>referring to sexual intercourse</u> with <u>Judy Green (a pseudonym) an individual younger than 14 years of age</u>.

2

Simpson did not object to the amendments in the indictment.  Yet, he argues for the first time on appeal that the trial court erred in permitting these amendments.  The State argues that this issue is unpreserved.

"An indictment is a written instrument presented to a court by a grand jury charging a person with the commission of an offense."  *Smith v. State*, 494 S.W.3d 243, 246 (Tex. App.—Texarkana 2015, no pet.) (quoting CONST. amend. V, § 12(b)).  Under Article 1.14,

> If the defendant does not object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding.

TEX. CODE CRIM. PROC. ANN. art. 1.14.  Additionally, Article 28.10 "ensure[s] that the State ha[s] ample opportunity to repair indictment defects and that the defendant receive[s] the requisite notice of indictment changes, as well as an opportunity to respond to them" by (a) allowing the defendant not less than ten days before trial to respond to the amendment if he objects, (b) permitting trial amendments if the defendant does not object, and (c) prohibiting an amendment over the defendant's objection if it "charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced."  *Teal v. State*, 230 S.W.3d 172, 176–77 (Tex. Crim. App. 2007); *see* TEX. CODE CRIM. PROC. ANN. art. 28.10(c).  Under the current statutory scheme, defects of form and substance are required to be preserved at trial.  *See Teal*, 230 S.W.3d at 176–77.

Simpson complains that the trial court erred in allowing the amended indictment to contain additional or different manner and means of committing the offense.  "When a charging instrument

3

alleges an offense, any objection to the instrument is to the form . . . and [is] therefore not a fundamental defect." *Ex parte Villalpando*, 85 S.W.3d 832, 834 (Tex. App.—Waco 2002, orig. proceeding) (citing *Green v. State*, 578 S.W.2d 411, 414 (Tex. Crim. App. 1979)). As a result, error preservation under Article 1.14 is required. *Teal*, 230 S.W.3d at 176–77. Because Simpson did not object to the amendments, the issue is unpreserved. *See id*. at 177; *Smith*, 494 S.W.3d at 247–48 ("Because defects in indictments are subject to waiver, the existence of such defects does not render the indictment void.").

Simpson also argues that the amended indictment alleged a new and different offense.[1] Article 28.10(c) required him to raise this objection in the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 28.10(c). As an attempt to label the issue as a jurisdictional one, Simpson further argues that the original indictment (not the amended indictment) "failed to allege an offense" because it "failed to allege that Judy Green was a minor." This complaint is meritless. Although the phrase "an individual younger than 14 years of age" did not appear in the original indictment, the original indictment specified that the offense alleged was second-degree online solicitation of a minor, thereby establishing that Judy was alleged to be a minor under the terms of the statute.[2] "[I]ndictments charging a person with committing an offense, once presented, invoke the jurisdiction of the trial court, and jurisdiction is no longer contingent on whether the indictment contains defects of form or substance." *Id.* at 247 (quoting *Teal*, 230 S.W.3d at 177).

---

[1]Both indictments clearly stated that the offense was online solicitation of a minor and that the statute of offense was Section 33.021 of the Texas Penal Code.

[2]Online solicitation of a minor is a third-degree offense that becomes a second-degree offense if the victim "is younger than 14 years of age or is an individual whom the actor believes to be younger than 14 years of age at the time of the commission of the offense." TEX. PENAL CODE ANN. § 33.021(f).

4

Because the trial court was presented with an indictment that alleged an offense, it had jurisdiction to try Simpson. Therefore, we overrule Simpson's argument that error preservation was not required because the matter involved the trial court's jurisdiction. *See Teal*, 230 S.W.3d at 176–78. Instead, we find that Simpson's complaints about the amended indictment were required to be preserved under Article 1.14 and that by failing to object to the State's amended indictment, Simpson's first complaint on appeal is unpreserved. As a result, we overrule Simpson's first point of error.

## II. Simpson's Arguments About Extraneous Acts Do Not Comport with those Made at Trial

In his second point of error, Simpson argues that the trial court erred in finding extraneous-offense evidence admissible under Article 38.37. While Simpson only argued at trial that the evidence was insufficient to support a jury's finding that he had committed the offenses beyond a reasonable doubt, he argues on appeal that (1) the extraneous offenses were not substantially similar to the offense committed against Judy, (2) one witness's testimony about Simpson's Snapchats should have been excluded because the State did not authenticate the Snapchats, and (2) testimony about what Simpson must have meant by his Snapchat conversation was speculative.[3] The State argues that Simpson has failed to preserve these arguments by failing to make them in the trial court. We agree.

---

[3]"Relevant evidence" is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX. R. EVID. 401. Simpson acknowledges that Article 38.37 evidence is relevant on the issue of a defendant's "propensity to engage in the same conduct." *See Harty v. State*, 552 S.W.3d 928, 933 (Tex. App.—Texarkana 2018, no pet.). He does not argue that the evidence was irrelevant. Yet, he writes that "the State presented **no** evidence demonstrating what material fact . . . was made more probable by" the extraneous-offense evidence. Since Simpson does not brief the issue of relevance or argue that the girls' testimony was irrelevant, we interpret his complaint to be

5

## A.    The Article 38.37 Hearing

Under Article 38.37, evidence that a defendant has committed indecency with a child or online solicitation of a minor is admissible in a trial for online solicitation of a minor, notwithstanding Rules 404 and 405 of the Texas Rules of Evidence, "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant."  TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a)–(b). However, before this type of extraneous-offense evidence may be introduced, the trial court must conduct a hearing outside of the jury's presence to "determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt."  TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a(1).

At the Article 38.37 hearing, the trial court heard from four other child victims, including Bethany Land, Amanda Jones, Mary Brown, and Lori Hill.[4]  All four children encountered Simpson while he was a seventh and eighth grade substitute teacher at New Boston Middle School. While Bethany and Amanda did not communicate with Simpson via social media, they testified to acts of sexual contact.

Bethany testified that while in Simpson's class, Simpson played with her jacket, dug in her pockets, and made her feel "very space invaded because he was very close to [her]."  Bethany said she tried to evade him, but that Simpson touched her with his hand on her "genital crotch area."

---

that the State was required to specify how the testimony was relevant.  The State's notice of intent to use these extraneous offenses stated that the evidence would be used "for any bearing the evidence has on relevant matters, including character of the defendant and acts performed in conformity with the character of the defendant."  The issue, assuming one was raised by the briefing, is meritless.

[4]We use the pseudonyms assigned by the State to protect the identity of the children.  *See* TEX. R. APP. P. 9.10.

6

According to Bethany, Simpson also touched her leg and asked if she was going to stay after class. Bethany reported the incident to the school and told the trial court that she had seen Simpson touching other female students on the buttocks and breasts.

Amanda testified that Simpson "rubbed his crotch on [her] arm." She described Simpson's penis as "hard" during the touching and her demeanor as "really nervous." Amanda testified that she noticed Simpson's erect penis on other occasions as he walked around the classroom and said he had also "rubbed [her] thighs one time."

Mary and Lori discussed their social media interactions with Simpson. Mary testified that she began Snapchatting with Simpson after noticing that he had Snapchatted with her friend. Mary said Simpson began flirting with her and that his conversations with her became sexual after two to three weeks of online contact. According to Mary, Simpson said he wanted to "spread [her] legs" and "eat [her] out." Mary also testified that Simpson sent her photos of his penis and that she had responded by sending him photos of her privates.

Lori also talked with Simpson over Snapchat. According to Lori, Simpson sent her photos of his penis and messages of a sexual nature. He wrote one day that Lori "looked good" and "that he wanted to take [her] around the corner." Lori testified that Simpson asked her for nude photos, that she sent him a photo of her in underwear, but that she refused Simpson's requests of her to send naked photos and decided to terminate her conversations with him.

## B.     Simpson's Complaints Are Unpreserved

At the Article 38.37 hearing, Simpson argued only that the State failed to meet the burden of proving that a jury could find beyond a reasonable doubt that he committed the extraneous

7

offense because the girls' testimony was not corroborated. He does not raise this issue on appeal. Instead, he argues that the extraneous offense against Bethany was not substantially similar to the offense committed against Judy, Lori's testimony about Simpson's Snapchats should have been excluded because the Snapchats were not authenticated, and Lori's testimony about what Simpson must have meant when he wanted to "take [her] around the corner" was speculative.

"[A]ppellate courts may uphold a trial court's ruling on any legal theory or basis applicable to the case, but usually may not reverse a trial court's ruling on any theory or basis that might have been applicable to the case, but was not raised." *Martinez v. State*, 91 S.W.3d 331, 336 (Tex. Crim. App. 2002). This is due to the "'judge-protecting' rules of error preservation." *Id.* at 335. "To preserve error, a party must object and state the ground for the objection with enough specificity to make the trial judge aware of the complaint, unless the specific grounds were apparent from the context." *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016) (citing TEX. R. APP. P. 33.1(a)(1)). "The objection must be sufficiently clear to give the judge an opportunity to address and, if necessary, correct any error." *Id.* "If a trial objection does not comport with the argument on appeal, error has not been preserved." *Id.*

The objection Simpson made in the trial court regarding Article 38.37 does not comport with the complaints he now raises on appeal. Simpson's first argument regarding substantial similarity is an issue raised when a defendant lodges a Rule 403 objection and argues that the probative value of extraneous offenses is outweighed by the danger of unfair prejudice or confusion of the issues. Simpson did not lodge a Rule 403 objection or raise any argument about

8

the substantial similarity of the offenses in the trial court. Likewise, Simpson's complaints about Snapchat authentication and speculation were never raised below.

Article 38.37 only required the trial court to determine that the extraneous-offense evidence was "adequate to support a finding by the jury that the defendant committed the separate offense[s] beyond a reasonable doubt." TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2-a. Simpson does not challenge this finding by the trial court on appeal. Instead, he raises arguments that do not comport with the arguments raised at the Article 38.37 hearing. As a result, we find Simpson's second appellate point unpreserved and overrule it.

## III. Simpson's Complaint About Improper Bolstering Is Unpreserved

In his third point of error, Simpson argues that the trial court erred in allowing testimony that bolstered Bethany's credibility. The State argues that Simpson failed to preserve this issue for our review. We agree.

At trial, Bethany testified that Simpson talked and flirted with girls at the middle school and had touched Mary's "butt and her boob." Bethany said Simpson sat down next to her while substitute teaching and "seemed very attracted to the way [she] was eating" a lollipop. According to Bethany, Simpson dug in her pockets, tickled her side, asked her if the lollipop tasted good, and made her feel "invaded" and "nasty." Bethany testified that Simpson placed his hand on her leg and genital area.

Bethany reported the incident to the front office after class. When asked if she experienced "difficulties at the school" with students in her grade as a result of her outcry, Simpson objected on the ground of relevance, prompting the following discussion:

9

THE COURT:  What is the objection?

[BY THE DEFENSE]:  Relevance, Your Honor.  This is a trial for [Judy Green].

[BY THE STATE]:  It goes towards her either bias or motive to not fabricate, the fact that she has gone through these difficulties with her peers.

[BY THE DEFENSE]:  Okay.  It's after her alleged -- all the alleged incidents.

THE COURT:  She's testifying.  I'll allow it.  Overruled.

After the trial court overruled the objection, Bethany testified, "I was bullied a lot and got a lot of hate because of it."

On appeal, Simpson argues that Bethany's testimony about being bullied constituted bolstering, which was impermissible since her credibility had not been impeached.  "While the term 'bolstering' is slowly dying as an objection on its face," the objection is still often used and "appears to have roots in several evidentiary rules."  *Rivas v. State*, 275 S.W.3d 880, 886 (Tex. Crim. App. 2009).  To preserve a complaint for our review, a party's trial objection must state the specific grounds for the desired ruling if not apparent from the context.  TEX. R. APP. P. 33.1(a)(1).

On appeal, Simpson argues that Bethany's testimony should have been excluded since her credibility had not been impeached.[5]  Because Simpson's general relevance objection was not specific enough to explain the basis for exclusion he now argues on appeal, Simpson's appellate argument, which seems to evoke Rules 608 or 613 of the Texas Rules of Evidence, is unpreserved.

---

[5]Simpson's brief does not directly argue that the trial court erred in finding the evidence relevant.  It merely states, "In finding the testimony relevant, the trial court failed to recognize that [Bethany's] testimony and thus her credibility dealt with a collaterally alleged extraneous offense."  Under Article 38.37, such testimony about Simpson's extraneous offense was relevant.

10

*See Reyes v. State*, 267 S.W.3d 268, 274 (Tex. App.—Corpus Christi 2008, pet. ref'd) (holding that a general relevance objection (like the one lodged by Simpson at trial) is insufficient to preserve a complaint that the purported testimony constitutes bolstering); *Zemen v. State*, 912 S.W.2d 363, 366 (Tex. App.—Houston [14th Dist.] 1995, no pet.) (same). We find that the argument made on appeal does not comport with the objection made at trial. As a result, we overrule Simpson's third point of error.

## IV. Legally Sufficient Evidence Supports Simpson's Conviction

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by

the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Here, the State's amended indictment alleged that Simpson committed online solicitation of a minor. A person commits this offense if

> the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

TEX. PENAL CODE ANN. § 33.021(c). "[I]t is the *conduct* of requesting a minor to engage in illegal sexual acts that is the gravamen of the offense." *Ex parte Lo*, 424 S.W.3d 10, 16–17 (Tex. Crim. App. 2013) (alteration in original). "It is not a defense to prosecution under Subsection (c) that the meeting did not occur." TEX. PENAL CODE ANN. § 33.021(d); *see Maloney v. State*, 294 S.W.3d 613, 619 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd).

At trial, Judy testified that Simpson was "[v]ery controlling and flirtatious" with the girls at school, including her. Judy said Simpson reached out to her on Snapchat, started discussing things of a sexual nature, and sent her "inappropriate pictures." According to Judy, Simpson warned her that he would get in trouble if she told anyone about his actions and convinced her that she "didn't want anyone in trouble."

Judy testified that Simpson touched her breast and buttocks at school on several occasions. According to Judy, while he was touching her at school, Simpson continued to send messages about "what all he'd like to do with [her]." Judy testified, "One night he texted me and said that

12

he was going to come to my house and pick me up, and we were going to have sex in the back of his truck." During his video-recorded interview, Simpson admitted he sent sexual messages to Judy, including one about meeting her at her house and taking her in his truck to have sex.[6]

Simpson does not deny sending Judy electronic messages constituting sexually explicit communications.[7] Instead, he argues that the evidence is legally insufficient to show that he "made arrangements with Judy for Judy to meet him somewhere at a certain time to engage in criminal conduct" and that the State failed to meet its burden to show the messages were sent with the intent to commit aggravated sexual assault or indecency with a child. We disagree.

Judy's testimony, and Simpson's admission, showed that Simpson sent a message saying he was going to pick Judy up at her house to have sex. From this evidence, a rational jury could find that Simpson solicited Judy to meet him to have sex on the night the message was sent, even if the meeting did not occur. *See* TEX. PENAL CODE ANN. § 33.021(d).

To determine if the message was sent with the intent to have Judy engage in sexual contact or sexual intercourse, we may look to Simpson's "conduct, remarks, or all the surrounding circumstances." *Jones v. State*, 229 S.W.3d 489, 497 (Tex. App.—Texarkana 2007, no pet.) (quoting *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd) (citations

---

[6]Simpson also stated that he made a mistake when he "got pictures from middle school girls."

[7]Subsection (b) of Section 33.021, which prohibited "sexually explicit" communication with a minor or distribution of "sexually explicit material" to a minor, was found facially unconstitutional because it "prohibit[ed] constitutionally protected speech when that speech was protected with constitutionally protected thought." *Ex parte Lo*, 424 S.W.3d at 24, 26; *see* TEX. PENAL CODE ANN. § 33.021(b). Simpson was convicted under subsection (c) of Section 33.021, which has not been found unconsitutional. Whereas subsection (b) prohibits speech, subsection (c) prohibits "the *conduct* of requesting a minor to engage in illegal sexual acts." *Lo*, 424 S.W.3d at 17; *see Ganung v. State*, 502 S.W.3d 825, 826 (Tex. App.—Beaumont 2016, no pet.) (rejecting constitutional challenge to subsection (c)); *Ex Parte Zavala*, 421 S.W.3d 227, 232 (Tex. App.—San Antonio 2013, pet. ref'd) (same); *Maloney*, 294 S.W.3d at 625–29 (same).

13

omitted)). The requisite intent here is shown in the message alone, which states that the purpose of the meeting was to have sex with Judy. Also, the jury could have looked at the following in deciding that Simpson had the required *mens rea*: Judy's testimony that Simpson touched her breasts and buttocks, Simpson's request to Judy not to report him, Bethany's testimony about her inappropriate sexual contact with Simpson, and the testimony from Amanda, Mary, and Lori about Simpson's extraneous acts.

Viewing the evidence in a light most favorable to the verdict, we find the evidence legally sufficient to support Simpson's conviction for online solicitation of a minor. Therefore, we overrule his fourth point of error.

## V. Simpson Was Not Harmed by any Jury-Charge Error

In his last point, Simpson raises two grounds of alleged jury charge error.

### A. Standard of Review

Review of alleged jury-charge error utilizes a two-step process. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32).

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13. "A trial court must submit a charge setting forth the 'law applicable to the case.'" *Lee v. State*, 415 S.W.3d 915, 917 (Tex. App.—Texarkana 2013, pet. ref'd) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). "The

purpose of the jury charge . . . is to inform the jury of the applicable law and guide them in its application. It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion." *Id.* (quoting *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007)).

The level of harm necessary to require reversal due to jury-charge error is dependent upon whether the appellant properly objected to the error. *Abdnor*, 871 S.W.2d at 732. Here, because Simpson admits that he failed to raise the alleged errors below, we will not reverse unless the record shows the error resulted in egregious harm, *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g)), such that he did not receive a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 2005); *Loun v. State*, 273 S.W.3d 406, 416 (Tex. App.—Texarkana 2008, no pet.). "Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007). In making this determination, we review "the entire jury charge, the state of the evidence, the argument of counsel, and any other relevant information in the record as a whole." *Villarreal v. State*, 205 S.W.3d 103, 106 (Tex. App.—Texarkana 2006, pet. dism'd, untimely filed) (citing *Almanza*, 686 S.W.2d at 171).

**B.      Simpson Was Not Egregiously Harmed by the Inclusion of the Phrase "Electronic Mail"**

The application portion of the trial court's jury charge read:

If you find from the evidence beyond a reasonable doubt that on or about November 29, 2017, in Bowie County, Texas, the defendant, DYLAN SIMPSON, did then and there, being a person who was 17 years of age or older, with the intent

15

to commit the offence of aggravated sexual assault of a child and/or indecency with a child by sexual contact, intentionally communicate over the internet and/or by electronic mail and/or by text message and/or by an electronic message service or system and/or through a commercial online service, in a sexually explicit manner, namely by referring to sexual intercourse with Judy Green (a pseudonym) an individual younger than 14 years of age, then you will find the defendant guilty of Online Solicitation of a Minor[.]

Simpson argues that the trial court's charge was erroneous because there was no evidence of any emails between Simpson and Judy.[8]

Assuming, without deciding, that the trial court should have excluded the phrase "electronic mail" in the application paragraph of the jury charge, nothing establishes that Simpson was egregiously harmed by its inclusion. As explained below, the remaining charge was proper, the arguments of counsel focused on the social media messages, and the evidence was legally sufficient to establish the offense. Because there was no evidence or insinuation that Simpson had emailed Judy, there was no danger of any confusion by the jury. Since there was no chance that the jury's verdict could have been based on electronic mail, we cannot conclude Simpson was egregiously harmed by any alleged jury-charge error.

---

[8]Simpson also argues, "[T]he statute applies exclusively to communications over the Internet by specified means. It was a misstatement to posit the communication could occur over the internet or by electronic mail, text message, electronic message service or system, or commercial online service." To the extent this statement raises a decipherable argument, we dismiss it since Section 33.021(c) specifies that the offense can be committed "over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service." TEX. PENAL CODE ANN. § 33.021(c). Simpson's brief also states, "[I]t is questionable . . . that either [S]napchat or Instagram were 'electronic message services.'" He cites nothing in support of that statement. In any case, it was undisputed at trial that Judy received electronic messages from Simpson by Snapchat over the internet.

**C. The Trial Court's Limitation to Applicable Article 62.001 Offenses Was Proper**

Next, the general portion of the trial court's charge correctly stated that the *mens rea* element of the offense would be met only if the solicitation occurred "with the intent to commit an offense listed in Article 62.001(5)(A)(B), or (K), Code of Criminal Procedure." Because this charge was consolidated for trial with a charge for indecency with a child, the charge read,

> Our law further provides that a person commits the offense of Indecency with a Child by Sexual Contact if, with a child younger than 17 years, whether the child is of the same or opposite sex, the person, with intent to arouse or gratify the person's sexual desire, intentionally or knowingly engages in sexual contact with a child or causes the child to engage in sexual contact.

The trial court properly instructed the jury that "sexual contact" meant "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or any touching of any body part of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person." The definition section also contained the following:

> Definitions of applicable offenses listed in Article 62.001(5)(A)(B), or (K), Code
>
> of Criminal Procedure:
>
> "Aggravated Sexual Assault of a Child" a person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the sexual organ of the defendant to contact or penetrate the mouth, anus, or sexual organ of a child by any means and the child is younger than 14 years of age.
>
> "Indecency with a Child by Sexual Contact" same definition as listed above.

Aggravated sexual assault and indecency with a child are both included in Article 62.001(5)(A). TEX. CODE CRIM. PROC. ANN. art. 62.001 (Supp.). Because there are other offenses listed in Article 62.001(5), Subsections (A), (B), and (K), Simpson argues that the trial court's

17

limitation of "applicable offenses" constituted a comment on the weight of the evidence. In other words, Simpson argues, "The charge should have been worded: 'among the offenses listed in Article 62.001(5)(A) are indecency with a child and aggravated sexual assault.'"

While a trial court may not submit a charge that comments on the weight of the evidence, we disagree that the trial court's limitation to the only offenses listed in the State's indictment constituted a comment on the weight of the evidence. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. The charge comments on the weight of the evidence if it assumes the truth of a controverted issue or directs undue attention to particular evidence. *See Lacaze v. State*, 346 S.W.3d 113, 118 (Tex. App—Houston [14th Dist.] 2011, pet. ref'd). In determining whether the charge improperly comments on the weight of the evidence, we consider the court's charge as a whole and the evidence presented at trial. *See id.* Here, Simpson's briefing does not argue—and we do not find—that the trial court's instructions either assumed the truth of a contested fact issue or directed the jury to any particular evidence. Instead, we find that the court was merely informing the jury of "the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14. Simply put, there was no jury-charge error in the trial court's definitions.

Because we have determined that Simpson was not egregiously harmed by any jury-charge error, we overrule his last point of error.

18

## VI. Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     December 2, 2019
Date Decided:       December 31, 2019

Do Not Publish