**AFFIRMED as MODIFIED and Opinion Filed August 12, 2024**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

### No. 05-23-00066-CR

### FRANKLIN FULLER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 4**
**Dallas County, Texas**
**Trial Court Cause No. F19-75449-K**

## MEMORANDUM OPINION

Before Justices Molberg, Nowell, and Kennedy
Opinion by Justice Molberg

Appellant Franklin Fuller was indicted for capital murder, and a jury found him guilty of the lesser-included offense of murder and assessed punishment at life imprisonment and a $10,000 fine. On appeal, appellant argues (1) his trial counsel conceded appellant's guilt in violation of *McCoy v. Louisiana*, (2) the trial court abused its discretion in admitting a video exhibit that contained inadmissible extraneous offense evidence, (3) the trial court abused its discretion in admitting the video over his rule 403 objection, and (4) the trial court abused its discretion when it admitted a jail call that included a third party's irrelevant statement about

punishment. He also asks us to modify the judgment to correct a clerical error. For the reasons explained below, we modify the judgment as requested and otherwise affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.[1]

## Discussion

### 1. McCoy v. Louisiana *complaint*

In his first issue, appellant contends trial counsel violated his Sixth Amendment right to autonomy under *McCoy v. Louisiana*, 584 U.S. 414 (2018), by conceding appellant was guilty of the lesser-included offense of murder. In making this complaint, appellant points to statements counsel made during voir dire and in closing arguments.

Appellant was indicted for the offense of capital murder. He rejected all of the State's offers to plead guilty to murder. On August 23, 2022, the trial court explained to appellant the State had offered him fifty years' confinement if he pleaded guilty to murder and discussed alternatives, such as pleading guilty to murder and presenting evidence before the jury as to punishment. Appellant responded, "I did not commit capital murder." The court responded, "Nobody is talking about capital murder unless you have a full-on jury trial. Do you understand?" Appellant said he understood. The court continued:

---

[1] Because the issues raised by appellant do not require discussion of the full record, we limit our recitation of the facts to those necessary to resolve appellant's issues.

[Trial court]: All right. So on a regular murder, Monday, 50 years, tell the jury your story why this happened. Or today, you could take 50 years on a regular murder and possibly parole out in 25.

[Appellant]: I will take my chances at going to trial with capital murder.

[Trial court]: Really?

[Appellant]: Seriously.

At the court's invitation, the State then explained the evidence it planned to present at trial. The court explained the automatic life sentence attached to capital murder, and appellant reiterated his desire to proceed to trial, stating he was "taking this case full-on."

On August 29, 2022, at a pretrial hearing, the State informed the court its prior offers—pleading guilty to murder and having a punishment trial or pleading guilty to murder and serving fifty years—were still on the table. Appellant stated he wanted new counsel. Defense counsel stated appellant was rejecting the offers. The court appointed additional counsel for the limited purpose of discussing with appellant the State's offers, and appellant again rejected them, stating, "I know I'm on a suicide mission, and I'm okay with that."

On August 30, 2022, appellant again rejected the State's offers. The court, "out of an abundance of caution," granted appellant's motion for new counsel; the court stated, "[T]his is your last and final lawyer. There will be no more. We will be going to trial within the next 60 days." Appellant responded, "I appreciate that."

On January 11, 2023, the trial court announced the case was set for trial the next week. The parties acknowledged that appellant had again rejected the State's

–3–

plea bargain offers. New defense counsel then asked questions of appellant on the record. Appellant stated he was prepared to go to trial, he would not entertain plea bargain offers from the State and was unwilling to make any counteroffers, he had discussed with counsel possible witnesses, and he did not want any mental issues brought up.

During voir dire, defense counsel told the jury appellant killed the victim:

Now, I hate to let the cat out of the bag. If anybody thought they were going to get to spend a week down here on a who done it. But [appellant] did take a life, the heart of the allegation of this indictment. The State has said by his taking of that life, he committed the offense of capital murder. And I'm here to tell you that we have entered a plea of not guilty, and we intend to persist with our plea of not guilty. And, in fact, we intend to offer you multiple reasons why the verdict of capital murder should be not guilty.

In his opening statement, defense counsel told the jury the State was "not going to be able to bring you a lot of the evidence that you need in this case to find somebody guilty of capital murder." Counsel acknowledged there would be video evidence showing appellant shot the victim in the arm but said it would be "impossible for [the State] to bring you evidence of what was in the mind of the defendant." Counsel generally argued there was no evidence appellant committed robbery and thus could not be guilty of capital murder.

After the State rested its case, defense counsel made a record with appellant. Appellant stated he was satisfied with counsel's efforts at trial; he understood he did not have to testify; he did not want to put on testimony or any evidence relating to

–4–

mental health; he did not want anyone subpoenaed "on the issues of guilt or punishment"; his counsel had done as appellant had asked; and he did not wish to testify.

In closing, defense counsel argued, in pertinent part, as follows:

[Appellant] is presumed innocent on each of the allegations and each of the elements in that indictment. Okay. Including whether or not there was an intentional murder during the course of a robbery. And, folks, I'm about to give you several reasons why I suggest to you that you cannot go back there and find the defendant guilty of capital murder.

Counsel then made arguments why appellant should be found not guilty of capital murder before telling the jury the following:

I submit to you that the only proper verdict in this case is to find the defendant guilty of murder. Okay. And we thought that you might have a lot of options when we get to this phase of the trial. But at this point, the options that you have is either capital murder or murder. And in order to find capital murder, you have to have been proven to, that the defendant was acting out there with the specific intent that he was wanting to kill this man, and he did it to rob him.

When a criminal defendant expressly asserts that the objective of his defense is to maintain innocence, the Sixth Amendment prohibits his counsel from conceding guilt. *McCoy*, 584 U.S. at 424. If counsel violates his client's autonomy in this way, he injects structural error into the trial. *Id.* at 427–28. "[A] defendant cannot simply remain silent before and during trial and raise a *McCoy* complaint for the first time after trial." *Turner v. State*, 570 S.W.3d 250, 276 (Tex. Crim. App. 2018). A

defendant makes a *McCoy* complaint with sufficient clarity when he makes express statements of his will to maintain innocence. *Id.*

Here, as in *McCoy*, counsel conceded appellant's guilt to the lesser-included offense of murder. However, unlike *McCoy*, appellant gave no indication of his "intransigent and unambiguous objection" to counsel's concession, *see McCoy*, 584 U.S. at 420, nor is there any evidence counsel knew appellant "opposed the concession, or ever instructed counsel not to pursue that tactic," *see Martin v. State*, No. 05-18-00522-CR, 2019 WL 3214149, at *2 (Tex. App.—Dallas July 17, 2019, pet. ref'd) (mem. op., not designated for publication) (citing *Turner*, 570 S.W.3d at 276).

Despite this, appellant argues his pretrial rejections of the State's offers for him to plead guilty to murder in exchange for a reduced sentence suffice to demonstrate his will to maintain his innocence of the lesser-included offense. We cannot agree. The aforementioned plea bargain discussions reveal that although appellant was adamant he was innocent of capital murder, in the record before us, neither he nor counsel discussed trial strategy or lesser-included murder, apart from rejecting offers to plead guilty to murder. We find no cases concluding the rejection of a plea bargain offer provides a basis to raise a *McCoy* complaint on appeal. Moreover, during trial, after the State rested its case, appellant stated on the record he had no complaints with counsel's performance. While appellant's statements

were made prior to closing arguments, they were made after counsel first conceded during voir dire that appellant killed his victim.

Because the record does not show appellant objected to counsel's concession of guilt on murder at any point during the proceedings below, we overrule his *McCoy* complaint. *See McCoy*, 584 U.S. at 428; *Turner*, 570 S.W.3d at 276; *Martin*, 2019 WL 3214149, at *2.

### 2. *Extraneous offense evidence*

In his second issue, appellant contends the trial court abused its discretion in admitting video from a police officer's body camera because it contained discussion of an inadmissible extraneous offense. In his third issue, he argues the same video was inadmissible because its probative value was substantially outweighed by a danger of unfair prejudice for the same reason.

Sergeant Matthew Terry testified he assisted with locating appellant and eventually found him sleeping in a parked car. Given the severity of the alleged offense, Terry and other officers drew their weapons and "performed a felony stop," called appellant out of the car, got him on the ground, and handcuffed him. Officer Carlos Mandes testified he assisted Terry with appellant's arrest. The State offered into evidence portions of video from Mandes's body camera. Appellant objected, arguing there was mention in the video "that there's an extraneous warrant. We're not going to be able to clear that up. I'd object to that as bringing in extraneous 404(b) material before the jury, and in all likelihood would prejudice him in front of

–7–

the jury to find out the defendant had an active warrant for him as well as being the suspect in a capital murder case." The trial court overruled appellant's objections and admitted the video as State's Exhibit 50, in two parts.

In part one of the video, Mandes drives to a 7-Eleven and runs to assist with the arrest of appellant, which is already in progress. At least four officers can be seen on video with their weapons drawn, in position behind two police cars, yelling at appellant to come out of his vehicle with his hands up. Appellant is arrested, and at three different points throughout the four-and-a-half-minute video, appellant is told there is a warrant for his arrest, without any specification of offense. Mandes begins searching appellant and finds three bullets in appellant's front left pocket. In part two of the video, Mandes searches appellant's person and removes items from his pockets.

After the video was admitted, the State asked Mandes whether appellant had a traffic warrant he was arrested on. Without objection, Mandes responded affirmatively. The State then published a portion of part two of the exhibit.

We will assume without deciding the trial court abused its discretion in admitting this evidence. The violation of an evidentiary rule resulting in the erroneous admission of evidence constitutes nonconstitutional error, which we analyze under rule of appellate procedure 44.2(b). *Jenkins v. State*, No. 05-22-01003-CR, 2024 WL 412518, at *6 (Tex. App.—Dallas Feb. 5, 2024, pet. ref'd) (mem. op., not designated for publication). Under this rule, we disregard error that

does not affect a defendant's "substantial rights." TEX. R. APP. P. 44.2(b). Substantial rights are affected if the error had a substantial and injurious effect or influence in determining the jury's verdict; on the other hand, if the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand. *Thomas v. State*, 505 S.W.3d 916, 926 (Tex. Crim. App. 2016). The improper admission of evidence is harmless if the same or similar evidence is admitted without objection at another point during trial. *Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010); *Jenkins*, 2024 WL 412518, at *6.

As noted above, Mandes testified, without objection, that appellant was arrested for a traffic-offense warrant. Furthermore, the record reveals that the part of the exhibit about which appellant complains—part one—was never published to the jury, and the jury never requested to see part one of the exhibit. *See Null v. State*, 640 S.W.3d 370, 380 (Tex. App.—Houston [14th Dist.] 2022) (en banc) (concluding any error in admission of exhibit was harmless when it was never published during trial or requested during deliberations), *rev'd on other grounds*, 690 S.W.3d 305 (Tex. Crim. App. 2024). Because other, unobjected-to evidence showed appellant was arrested on an extraneous warrant, and the record does not show the jury ever saw or heard the complained-of part of the video exhibit, we conclude any error in the admission of the video had no influence on the jury's verdict and was harmless. We overrule appellant's second and third issues.

### 3. Jail phone call

In his fourth issue, appellant argues the trial court abused its discretion in admitting a portion of a jail phone call that included a third party's statement about punishment. During the testimony of an investigator from the district attorney's office, the State sought to admit a phone call appellant made from the jail. During the call, among other things, appellant explained to the woman he was speaking with that he was charged with capital murder. The woman stated, "You know if you're found guilty, you're gone for life." Appellant said, "They'll probably give me the death penalty because they've got me on camera." Defense counsel "object[ed] to it when it goes into discussion of punishment, because punishment is not relevant at the issue of guilt." The trial court overruled appellant's objection.

We will again assume without deciding the trial court erred in admitting this evidence and evaluate any error for harm. Appellant does not complain about his own statement that he would probably get the death penalty because he was caught on camera, but complains only of the third party's statement that if found guilty, appellant would be "gone for life." Appellant makes no argument that this testimony had any influence in determining the jury's verdict, and we fail to see how it could have. The jurors learned about the two possible punishments for capital murder during voir dire and learned the State was not seeking the death penalty. Given this, we conclude any error did not influence the jury's verdict and thus did not affect

appellant's substantial rights.  *See* TEX. R. APP. P. 44.2(b).  We disregard any error as harmless and overrule appellant's fourth issue.

### 4.  *Judgment modification*

Finally, appellant argues the judgment should be modified to correctly state the name of the trial prosecutor.  We may modify the trial court's judgment to make the record speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993).  The judgment states the "Attorney for State" was Jessica Cherry.  The record, however, reflects that the trial prosecutors were Taylor Cowin and Caitlin Paver.  Accordingly, we will modify the judgment to correctly state the names of the attorneys representing the State.

### Conclusion

As modified, we affirm the trial court's judgment.

/Ken Molberg/
KEN MOLBERG
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b).
230066F.U05

–11–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FRANKLIN FULLER, Appellant

No. 05-23-00066-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4, Dallas County, Texas
Trial Court Cause No. F19-75449-K.
Opinion delivered by Justice Molberg. Justices Nowell and Kennedy participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

In the space after "Attorney for State," we delete "Jessica Cherry 24084438"; we insert in its place "Taylor Cowin and Caitlin Paver".

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered August 12, 2024